[No. G041379. Fourth Dist., Div. Three. Oct. 29, 2010.]

AKIL AFFAN et al., Plaintiffs and Appellants, v.
PORTOFINO COVE HOMEOWNERS ASSOCIATION, Defendant and
Appellant;
HUNTINGTON WEST PROPERTIES, INC., Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.D.

## COUNSEL

Allan B. Weiss & Associates, Allan B. Weiss, Allen L. Thomas and Sivi G. Pederson for Plaintiffs and Appellants.

Jerome M. Jackson and Doran B. Richart for Defendant and Appellant.

Jay D. Fullman for Defendant and Respondent.

## OPINION

**ARONSON, J.**—Plaintiffs Akil and Cenan Affan, husband and wife homeowners in a condominium complex, sued their homeowners association and its managing agent for damages after their unit was flooded with sewage. The Affans' complaint alleged that defendants breached their duty to maintain and repair the common area plumbing, which resulted in a sewage blockage that caused the flooding. According to the complaint, not only did defendants fail to prevent the sewage eruption through proper maintenance of the common area plumbing, but they also failed to repair and remediate the resulting damage and contamination within the Affans' unit.

Based on the "judicial deference" standard applicable to the ordinary maintenance decisions of homeowners associations (*Lamden v. La Jolla Shores Clubdominium Homeowners Assn.* (1999) 21 Cal.4th 249 [87 Cal.Rptr.2d 237, 980 P.2d 940] (*Lamden*)), the trial court entered judgment against plaintiffs on all but one cause of action. The court found the

homeowners association liable for breaching an equitable servitude and awarded the Affans their remediation costs of $33,800 as damages. The court denied all parties' requests for attorney fees and costs. Both the Affans and the homeowners association appealed.

We conclude the trial court erred in applying the *Lamden* rule of deference. The homeowners association failed to establish the factual prerequisites for applying the judicial deference rule. Additionally, the managing agent of the homeowners association has no claim to judicial deference under *Lamden*. Consequently, we reverse the judgment in part and remand for further proceedings in accord with the views expressed in this opinion. In the unpublished portion of this opinion, we affirm the damage award for plaintiffs on the equitable servitude claim.

I

BACKGROUND FACTS AND PROCEDURE

*Recurrent Plumbing Problems*

In 1986, Akil and Cenan Affan bought unit 107 in the Portofino Cove Condominiums as a vacation home.[1] They usually spent a few weeks a year vacationing in their condo. Since 1999, the Affans experienced a series of plumbing backups in their unit. From 1999 to 2005, every time they arrived at their condo, they found sewage residue in their kitchen sink or in the sink and tub in their master bathroom. This happened nine times in that six-year span.

Upon discovering each sewage backup, the Affans reported the problem to the property manager for the complex. They also consistently reported each plumbing incident to at least one member of the board of directors of defendant Portofino Cove Condominium Association (the Association), the common interest association for the complex. After each reported backup, the Association manager hired a plumber to snake the Affans' drain line.

The Affans' unit is on the first floor of a three-story building with an underground parking garage. Each ground floor unit shares vertical drainpipes with the units stacked above. The vertical drainpipes run through the shared common area walls and connect to lateral drainpipes running below the units

---

[1] When referring to the spouses individually, we use their first names. We intend no disrespect but simply aim for clarity and convenience. (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475, fn. 1 [274 Cal.Rptr. 911].)

and along the ceiling of the underground garage. Two of the Affans' first floor neighbors are members of the board of directors and also experienced similar sewage problems.

After finding a sewage backup in April 2003, Cenan wrote a letter to the Association's board of directors. In the letter, she complained of the persistent problem and reported that the plumber who responded to the latest call had recommended annual maintenance of the drain lines serving the building.

When the kitchen sink backed up on April 21, 2005, Akil telephoned the onsite property manager, Kevin Brown, to report the problem. Akil told Brown, an employee of defendant Huntington West Properties (Huntington West), that sewage backup into his unit was "a very chronic situation," and that he and his wife had complained in a letter to the Association, but had received "no answer." He requested that management send a "master plumber" to investigate the cause of the backups.

Huntington West had become the Association's managing agent in early 2004. Brown testified that in January or February of 2005, the Association began to consider whether it might save money by hiring a plumber to regularly maintain the main drain lines, rather than continually responding in a "piecemeal" fashion to backup problems. The board directed Brown to develop a "scope of work" for a regular maintenance contract for the complex, and to collect bids. The board asked him "to figure out what direction they should go in."

There is some documentary evidence suggesting the Association earlier considered arranging for maintenance of a main plumbing line. Minutes from an Association board meeting in 2001 stated, "The board would like to see a bid on a year contract" to "hydro[-]jet" a main line, which meant blasting the lines with a high-pressure stream of water. But no evidence showed the board ever contracted for that maintenance work, or took any action to maintain the drain lines before May 2005.

When Akil reported the April 21, 2005, sewage backup to Brown, the property manager suggested that Akil attend the Association board meeting the next day to discuss the issue, which he did. After listening to Akil's complaint, the board told him it had "signed off on a maintenance agreement" for the main plumbing lines at the complex. According to trial testimony, the Association entered into a five-year contract with Rescue Rooter, a plumbing contractor, to perform annual, "routine" maintenance on the main plumbing lines.

*The May 14, 2005 Sewage Damage*

On May 3, 2005, Rescue Rooter conducted a hydro-jet cleaning of the main lines. Less than two weeks later, on May 14, a major sewage backup damaged the Affans' condo. Kitchen sink debris and grease from the upstairs units erupted in the Affans' master bathroom sink, tub, and vanity closet. The sewage also overflowed onto the floors of the master bathroom and adjoining bedroom.

In response, Huntington West hired Rescue Rooter to snake the bathroom drain and retained Emergency Service Restoration, Inc., to clean up the spill. The emergency cleanup company extracted waste water, removed and disposed of the carpet, carpet pad, damaged baseboard and drywall, and steam cleaned and sanitized surfaces, and placed air scrubbers, dryers, and dehumidifiers throughout the unit.

In the immediate aftermath of the damage to the Affans' condominium, Association board members assured them the Association would "take care" of the situation. Brown met with the Association's casualty insurance adjuster to find out "what needed to be done," but apparently the Association encountered a "snag" with its insurer over coverage issues. Specifically, because the Affans had begun experiencing plumbing backup problems in 1999, and the Association switched to a new insurer in 2000, a dispute arose concerning which of the two insurers would cover the damage resulting from the 2005 eruption.

When the Affans filed their complaint against the Association and Huntington West on October 12, 2005, defendants had not done any additional repair or remediation work beyond the emergency cleanup of the unit. The parties agree the unit was uninhabitable.

The Affans' complaint stated five causes of action against the Association: breach of the CC&R's (the covenants, conditions, and restrictions governing the Association and its members), enforcement of equitable servitude, negligence per se, negligence, and private nuisance. The essence of their claims was that the Association had a duty under the CC&R's, the common law, and the Civil Code,[2] to maintain and repair the condominiums' common areas, including the sewer pipes, and the Association's failure to do this resulted in the sewage eruption that damaged the Affans' unit. Plaintiffs further claimed the Association breached its duty to promptly repair and remediate that

---

[2] Civil Code section 1364, subdivision (a), provides, in pertinent part: "Unless otherwise provided in the declaration of a common interest development, the association is responsible for repairing, replacing, or maintaining the common areas . . . ." (All further statutory references are to the Civil Code unless otherwise noted.)

damage. Finally, they alleged the sewage eruption created a private nuisance that the Association failed to abate. The Affans sued Huntington West only for negligence and private nuisance based on its failure both to prevent and to clean up the sewage eruption.

Over the next few months, the Affans received various bids for the remediation and restoration work needed in the unit. But they did not hire anyone to make the necessary repairs because the Association had not yet investigated the cause of the repeated backups nor taken any steps to prevent a recurrence.

*The Plumbing Expert's Opinion*

In April 2007, there was another sewage backup into the Affans' sink. At that point, the Association hired Thomas Hoffman, a forensic plumber, to investigate the cause of the numerous drain backups into the Affans' unit. Hoffman testified as a plumbing expert at trial.[3]

Hoffman testified a blockage of one of the main sewer lines serving the Affans' unit and the two units stacked above it caused the repeated sewage backups. The blockage occurred in a lateral drain line running through the parking garage beneath the stacked units. This was a common area that the CC&R's obligated the Association to maintain.[4] Hoffman diagnosed this blockage by using a camera to conduct a "video inspection" of the main lines; he also cut a cross section of one of the pipes.

Hoffman determined that debris, accumulated over a 10-year period, blocked the main lines. He concluded that Rescue Rooter did not clean the pipes properly on May 3, 2005, and that these pipes never had been cleaned properly. In Hoffman's opinion, Rescue Rooter used the wrong equipment to clear the main lines: Rescue Rooter should have used a "scour jet" with a motorized spinning head for mechanical boring, rather than simply trying to hydro-jet the lines. According to Hoffman, had Rescue Rooter properly cleaned the pipes on May 3, 2005, the May 14 sewage backup into the Affans' unit would not have occurred.

Hoffman testified about what should have been done at the condo complex to address the repeated first floor backups. He explained that "if there was

---

[3] In an unusual move, both sides designated Hoffman as an expert witness.

[4] Section 2.07 of the CC&R's sets forth the Association's duty as to "Repair and Maintenance" of the common areas: "[T]he Association shall . . . maintain, repair and replace the Common Property . . . to assure maintenance of the Common Property . . . in a clean, sanitary and attractive condition . . . ." Section 1.13 defines the "Common Property" or common areas as including "all gas, water and waste pipes, all sewers, . . . of the Project Improvements wherever located."

more than one backup [into a ground floor unit in a stacked-unit complex] in a year, there was some kind of problem in the pipes." He testified that the "accepted general practice" for assuring that pipes are "operating and functioning safely" after repeated backups into a ground floor unit from a shared sewer line is to "get a video inspection or . . . do a regular maintenance on the lines."

The Association eventually hired Hoffman to clean the main lines in May 2008. He cleared the lines using a motorized, spinning scour jet. At that point, the Affans hired a remediation company to repair and restore their condo at a cost of approximately $34,000.

*The Trial and Judgment*

The parties agreed to a bench trial. During the trial, the Association stipulated that Rescue Rooter negligently performed the maintenance on the main lines. At the conclusion of the Affans' case, the Association moved for judgment in its favor. The trial court made tentative findings in favor of both defendants on four of the five causes of action. The court announced it found for plaintiffs on only their nuisance claim and proceeded to hear argument on damages. The court then invited the parties into chambers for an off the record discussion. Upon returning to the courtroom, the court announced: "The record will reflect the defense rests. [¶] Both defendants rest . . . subject to a briefing schedule with respect to closing arguments relative to damages resulting from nuisance."

With the presentation of evidence concluded, the parties submitted briefs arguing both liability and damage issues. The court subsequently entered judgment against the Affans on all causes of action save one: The trial court held the Association liable to the Affans for breach of an equitable servitude, and awarded the Affans $33,800 in damages. The court further determined that all parties should bear their own attorney fees.

In its statement of decision, the trial court explained it applied the rule of judicial deference to the maintenance decisions of homeowners associations recognized in *Lamden, supra,* 21 Cal.4th 249. The court stated, "Based upon *Lamden,* defendants were not negligent nor have they breached the CC&R[']s in connection with their duty to maintain the common areas of the project." Further, the court ruled the nuisance claim was untenable because it "depends upon the establishment of negligence or a breach of the CC&R[']s with respect to the contractual obligation to maintain the premises."

While the statement of decision rejected any negligence liability on defendants' part for failing to maintain the common areas, the trial court did

find the Association contractually liable for breaching an equitable servitude, created by the CC&R's, "to promptly indemnify plaintiffs as a result of a casualty loss originating in a common area."[5]

As damages for this breach, the trial court awarded the Affans only the cost of remediation and restoration of the unit—$33,800. The court denied their claim for loss of use and emotional distress because the CC&R's limited the Association's liability to "restor[ing] the premises per [s]ection 10.01, to its 'former condition.' "

The trial court denied the Affans' and the Association's requests for attorney fees, available to the prevailing party under the CC&R's and § 1354, subd. (c), finding "neither party has prevailed in this matter." The court explained that although the Affans prevailed on the equitable servitude cause of action, they received far less in damages than they sought.

Both the Affans and the Association appealed from the judgment[6] and from an order after judgment denying their attorney fees requests.

## II

### Discussion

The primary issue in this appeal is whether the trial court erred in applying the judicial deference rule to shield both the Association and Huntington West from liability for the Affans' damages. Because this issue effectively dictates the handling of most other issues, we begin with an examination of the judicial deference rule established in *Lamden, supra*, 21 Cal.4th 249.

### A. The Rule of Judicial Deference

In *Lamden*, a condominium development experienced a persistent problem with termites. At various points, the homeowners association consulted with contractors and pest control experts and "[o]ver some years . . . elected to spot-treat . . . rather than fumigate . . . for termites." (*Lamden, supra*, 21 Cal.4th

---

[5] The trial court's equitable servitude analysis is explained in the unpublished portion of this opinion.

[6] The trial court entered judgment on October 22, 2008, but a week later entered an amended judgment to correct a clerical error: The original judgment was entered against both defendants on the equitable servitude cause of action though Huntington West was not named as a defendant on that claim. A month later, on November 24, the trial court entered a second amended judgment that corrected another clerical error. The second amended judgment clarified that Huntington West prevailed against the Affans not on *all* claims, but only on the negligence and nuisance causes of action—the only ones in which it was named. In an abundance of caution, the parties appealed from all three judgments.

at p. 253.) The plaintiff, an owner of a condominium in the development, disagreed with that choice and sued for damages, an injunction, and declaratory relief. She alleged that in opting only to spot treat the infestation, the Association failed to maintain and repair the development's common areas as required by the CC&R's and the Civil Code. (*Id.* at pp. 254–255.) At trial, she waived damages and sought only an injunction and declaratory relief.

The trial court applied a " 'business judgment test' " in evaluating the Association's decision to spot treat rather than fumigate. (*Lamden, supra*, 21 Cal.4th at p. 256.) The trial court found the Association, after ordering extensive remedial and investigative work, weighed the costs and benefits of both treatment methods, including the "possible problems entailed by fumigation," such as "relocation costs, lost rent, concerns about pets and plants, human health issues and eventual termite reinfestation." (*Lamden, supra*, at p. 255.) The trial court concluded the board's deliberative process provided it with " 'a rational basis for their decision to reject fumigation, and do . . . what they did,' " and entered judgment for the Association. (*Id.* at p. 256.)

The Court of Appeal reversed, holding that the trial court should have analyzed the Association's actions using "an objective standard of reasonableness" rather than the more easily met business judgment test. (*Lamden, supra*, 21 Cal.4th at p. 256.) The California Supreme Court granted review to answer the following question: "In adjudicating [the homeowner's] claims, under what standard should a court evaluate the board's decision?" (*Id.* at p. 253.)

In answering that question, the Supreme Court rejected the approaches of both lower courts and announced a new rule of "judicial deference" to the ordinary maintenance decisions of homeowners associations. The *Lamden* opinion made clear, however, that the rule applies only in limited circumstances. The court described those specific circumstances as follows: "Where a duly constituted community association board, upon reasonable investigation, in good faith and with regard for the best interests of the community association and its members, exercises discretion within the scope of its authority under relevant statutes, covenants and restrictions to select among means for discharging an obligation to maintain and repair a development's common areas, courts should defer to the board's authority and presumed expertise." (*Lamden, supra*, 21 Cal.4th at p. 253.) As justification for this deference, the court noted "the relative competence, over that of courts, possessed by owners and directors of common interest developments to make the detailed and peculiar economic decisions necessary in the maintenance of those developments." (*Lamden, supra*, 21 Cal.4th at pp. 270–271.)

It is important to note the narrow scope of the *Lamden* rule. It is a rule of deference to the *reasoned decisionmaking* of homeowners association boards concerning ordinary maintenance. It does not create a blanket immunity for all the decisions and actions of a homeowners association. The Supreme Court's precise articulation of the rule makes clear that the rule of deference applies only when a homeowner sues an association over a maintenance decision that meets the enumerated criteria. (See *Lamden, supra*, 21 Cal.4th at p. 269 [rejecting assertion that judicial deference rule will "insulate . . . boards' decisions from judicial review" (citing *Fountain Valley Chateau Blanc Homeowner's Assn. v. Department of Veterans Affairs* (1998) 67 Cal.App.4th 743, 754–755 [79 Cal.Rptr.2d 248], as example of where association's decision is not entitled to judicial deference because association acted in the "absence of . . . good faith")]; see also *Ekstrom v. Marquesa at Monarch Beach Homeowners Assn.* (2008) 168 Cal.App.4th 1111, 1123 [86 Cal.Rptr.3d 145] (*Ekstrom*) [judicial deference rule does not apply where board decision was inconsistent with CC&R's and thus beyond board's authority]; see also *Ritter & Ritter, Inc. Pension & Profit Plan v. The Churchill Condominium Assn.* (2008) 166 Cal.App.4th 103, 122 [82 Cal.Rptr.3d 389] [*Lamden* applies only "to 'ordinary' decisions involving repair and maintenance actions"; *Lamden* " 'gives no direction' " where lawsuit challenges " 'a board action involving an extraordinary situation (e.g., major damage from an earthquake) or one not pertaining to repair and maintenance actions' "].)

As for the facts in *Lamden*, the Supreme Court concluded "the trial court was correct to defer to the Board's decision" to spot treat rather than fumigate because the prerequisites for judicial deference were met: "Here, the Board exercised discretion clearly within the scope of its authority," and "[t]he trial court found that the Board acted upon reasonable investigation, in good faith, and in a manner the Board believed was in the best interests of the Association and its members. [Citations.]" (*Lamden, supra*, 21 Cal.4th at p. 265.)

## B.  *The Trial Court Erred in Applying the Judicial Deference Rule*

■ Turning to whether the trial court properly applied the rule of judicial deference in the case before us, we begin by noting the judicial deference rule is an affirmative defense. (*Ekstrom, supra*, 168 Cal.App.4th at pp. 1122–1123 ["Just as the corporate business judgment rule" is a defense, "so too is the rule of judicial deference to decisions of homeowner association boards articulated in *Lamden*"].) Thus, the defendant has the burden of establishing

the requisite elements for applying the rule. (*Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 969 [106 Cal.Rptr.3d 290] [defendant bears burden of proof on affirmative defense].)[7]

Here, the trial court did not require any particular showing to invoke the judicial deference doctrine, either by way of pretrial motion or at trial. The statement of decision contains no explicit findings concerning the judicial deference rule and instead simply states, "Based upon *Lamden*, defendants were not negligent nor have they breached the CC&R['s.]" From this, we infer the trial court found defendants met their burden of proving the *Lamden* judicial deference rule applies. We limit our review of that finding to the question of whether substantial evidence supports it. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632 [80 Cal.Rptr.2d 378] (*Winograd*).)

### 1. *Huntington West Has No Claim to Judicial Deference Under* Lamden

The trial court mistakenly assumed the *Lamden* rule of judicial deference applies equally to both defendants. It does not, because the two defendants are not similarly situated.

The Supreme Court's careful articulation of the rule makes clear that judicial deference is due only to the ordinary maintenance decisions of *homeowners associations*. (See *Lamden, supra*, 21 Cal.4th at p. 253.) Huntington West is not a homeowners association. In a tacit admission that it has no claim to judicial deference, Huntington West does not mention *Lamden* in its brief, but instead relies solely on the substantial evidence rule to support the judgment. (See *Winograd, supra*, 68 Cal.App.4th at p. 632.) Because Huntington West is merely the managing agent of a homeowners association, the trial court erred in concluding the *Lamden* rule of deference applied to shield it from liability.

### 2. *The Association Failed to Establish the Factual Prerequisites for Applying the Judicial Deference Rule*

At trial, the Association failed to establish the factual prerequisites for applying the rule of judicial deference. In fact, the Association did not prove the most fundamental element of this defense: that the Affans' lawsuit concerns a maintenance *decision* made by the Association. (See *Lamden*,

---

[7] The Association unsuccessfully tries to turn this burden of proof on its head, arguing the Affans failed to prove the Association did *not* meet the prerequisites for judicial deference. The contention lacks merit. The Association cannot dodge its burden of proving the facts needed to support this affirmative defense.

*supra*, 21 Cal.4th at p. 253 [rule of judicial deference applies "when owners in common interest developments seek to litigate ordinary maintenance decisions entrusted to the discretion of their associations' boards"].) Where *Lamden* involved the propriety of an association board's choice between alternative methods of dealing with a persistent termite infestation, the Affans sued the Association for its 10-year failure to undertake *any* maintenance of the condominium complex's main plumbing lines, despite knowledge of a recurring plumbing problem in first-floor units.

Though the Association considered hydro-jetting a main line in 2001, and then four years later, in early 2005, discussed whether annual maintenance of the main lines might be a more cost-effective way to deal with the recurring first-floor sewage backups, the Association took no action to maintain the lines until April 2005. To put the Association's inaction into perspective, it would be as if the association board in *Lamden* did nothing for years to address the condominium development's termite infestation and simply allowed the pest problem to fester, heedless of the risk posed to individual units.

■ The judicial deference doctrine does not shield an association from liability for ignoring problems; instead, it protects the Association's good faith decisions to maintain and repair common areas. In *Lamden*, the Supreme Court recognized the essence of an association's duty to maintain and repair is a duty to *act* based on reasoned decisionmaking. The court observed, "[T]he Declaration [of CC&R's] here, in assigning the Association a duty to maintain and repair the common areas, does not specify *how* the Association is to act, just that it should." (*Lamden, supra*, 21 Cal.4th at p. 270, original italics.)

There may be some rare situations in which an association's decision to do *nothing* to address a common area maintenance issue deserves judicial deference. For example, we can envision a scenario in which an association faces two extreme choices: doing nothing or adopting a prohibitively expensive course of action. A court may decide to extend judicial deference to an association's choice of inaction in that narrow context, if the choice stemmed from deliberations that carefully weighed the alternatives and gave primacy to the best interests of the association and its members. The present case, however, does not present that scenario. As already noted, the Association's inaction was not the result of any deliberative process.

A question arises concerning the significance of the Association's April 2005 decision to begin annual maintenance. Does that decision trigger application of the judicial deference doctrine? It does not. As events unfolded, the Association's decision to hire Rescue Rooter to clean the main

lines was inconsequential because Rescue Rooter's ineffectual hydro-jetting on May 3, 2005, had no discernable effect on the main lines: The hydro-jetting left the main lines choked with the same debris that had been accumulating for a decade.[8] Plaintiffs' lawsuit looked past that futile, last-minute cleaning effort and sought to hold the Association liable for its 10-year failure to address the maintenance needs of the common area plumbing lines. Put simply, the clogged drain lines and resulting sewage eruption do not implicate any *decision* by the Association, but rather reflect the Association's abiding indecision and inattention to plumbing maintenance issues.

Even if we could view the Association's failure to implement any maintenance of the drain lines as a "decision," other key prerequisites for application of the *Lamden* rule of deference are unmet here. For example, there was no evidence the board engaged in "reasonable investigation" (*Lamden, supra,* 21 Cal.4th at p. 253) before choosing to continue its "piecemeal" approach to sewage backups (i.e., sending plumbers to snake both drains in individual units), rather than servicing the main drain lines for the building. Instead, there was evidence the Association never sought to investigate the cause of the repeated backups until it hired Hoffman to do so in 2008.

Nor was there evidence the Association acted "in good faith and with regard for the best interests of the community association and its members" (*Lamden, supra,* 21 Cal.4th at p. 253), because no one testified about the board's *decisionmaking process.* The Association failed to present evidence the board weighed the costs and benefits of a particular course of action, or considered any other factors in choosing to snake drains in individual units rather than clear main drain lines. Finally, the Association did not meet its burden of proving its "decision" not to engage in maintenance was an exercise of its "discretion . . . to select among means for discharging an obligation to maintain and repair" common areas. (*Ibid.*) The record contains no evidence the board selected "among means" when it responded to each of the Affans' nine sewage eruptions by simply hiring a plumber to snake their drain.

This dearth of evidence on the nature of the Association's decisionmaking stands in stark contrast to the evidence presented in *Lamden.* There, the homeowners association consulted with contractors and pest control experts for several years in attempting to control termites in the plaintiff's building. (*Lamden, supra,* 21 Cal.4th at pp. 253–254.) The board ordered a significant

---

[8] In this, the Association was unlucky. According to plumbing expert Hoffman, had Rescue Rooter used the proper "scour jet" method to clean the lines, the May 14 sewage eruption would not have occurred. But, of course, the Association's failure to maintain and repair the drain lines for so many years courted just such a disaster.

amount of "[r]emedial and investigative work," and " 'seriously consider[ed]' " fumigation, a treatment method for which it obtained a bid. (*Id.* at p. 255.) The board ultimately chose spot treatment over fumigation because of concerns about "possible problems entailed by fumigation, including relocation costs, lost rent, concerns about pets and plants, human health issues and eventual termite reinfestation." (*Ibid.*) Thus, in *Lamden*, ample evidence demonstrated the association board engaged in the sort of reasoned decisionmaking that merits judicial deference. There is no such showing in the case before us.

■ In conclusion, the record contains no evidence showing the Association's nonmaintenance of the main plumbing lines was the result of a good faith decision, based upon reasonable investigation. Accordingly, the trial court erred in allowing the Association to invoke *Lamden*'s judicial deference rule.

### C. Applying the Judicial Deference Rule Constituted Prejudicial Error

The trial court's erroneous application of the judicial deference rule had dire consequences for plaintiffs' case. The trial court never decided, based on the *evidence*, whether defendants' failure to investigate the cause of the repeated first floor sewage eruptions, or to undertake any effective maintenance program for the main plumbing lines, constituted negligence or a breach of the CC&R's. Instead, the court simply concluded as a matter of law, "[b]ased upon *Lamden*," that defendants were not liable for negligence, negligence per se, breach of the CC&R's, or a private nuisance. Consequently, plaintiffs suffered prejudice when the trial court erroneously applied the judicial deference rule. It follows that we must reverse that part of the judgment entered in favor of defendants. (*Red Mountain, LLC v. Fallbrook Public Utility Dist.* (2006) 143 Cal.App.4th 333, 347–348 [48 Cal.Rptr.3d 875] [prejudicial error requires reversal]; Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.)

Ordinarily, when the trial court gives an incorrect legal reason for its ruling, we look for any correct legal basis on which to sustain the judgment. (*Kemp Bros. Construction, Inc. v. Titan Electric Corp.* (2007) 146 Cal.App.4th 1474, 1477 [53 Cal.Rptr.3d 673] (*Kemp*).) To that end, Huntington West urges us to affirm the judgment because substantial evidence supports the trial court's implied finding that it acted with reasonable care in responding as manager to the plumbing problems in the complex. The substantial evidence rule, however, is unavailing as an alternative ground for affirming the judgment for either defendant.

As the court explained in *Kemp, supra,* 146 Cal.App.4th 1474, "[W]here . . . a respondent argues for affirmance based on substantial

evidence, the record must show the court *actually performed* the factfinding function. Where the record demonstrates the trial judge did not weigh the evidence, the presumption of correctness is overcome. [Citation.] . . . 'The [substantial evidence] rule thus operates only where it can be presumed that the court has performed its function of weighing the evidence. If analysis of the record suggests the contrary, the rule should not be invoked.' " (*Id.* at pp. 1477–1478, original italics.) Here, the trial court did not weigh the evidence, but instead ruled defendants had no liability based on the rule of judicial deference. Because that conclusion was erroneous, we must reverse the judgment for defendants.

The Affans urge this court to order entry of judgment in their favor on the negligence cause of action because the Association had a nondelegable duty to maintain the common areas, making it vicariously liable for the stipulated negligence of Rescue Rooter. (See *Srithong v. Total Investment Co.* (1994) 23 Cal.App.4th 721, 726 [28 Cal.Rptr.2d 672] [landlord held liable for injuries to tenant caused by contractor's negligent roof repair]; *Frances T. v. Village Green Owners Assn.* (1986) 42 Cal.3d 490, 499 [229 Cal.Rptr. 456, 723 P.2d 573] [condominium association held to landlord's standard of care regarding common areas]; *White v. Cox* (1971) 17 Cal.App.3d 824, 830 [95 Cal.Rptr. 259] [condominium owner may sue association for personal injuries caused by association's negligent maintenance of common area].)

The doctrine of nondelegable duty does not support entry of judgment in the Affans' favor as a matter of law. Negligence liability depends on more than breach of duty. Causation and damages, for instance, are issues of fact that remain to be determined. On remand, the trial court must determine whether the plumber's negligence on May 3 constituted a substantial factor in causing the sewage eruption on May 14. If so, then the Association will be liable for the ensuing damage under the doctrine of nondelegable duty, assuming that Rescue Rooter's negligence is established by stipulation or competent evidence.

D.   *Substantial Evidence Supports the Judgment for Plaintiffs on the Breach of Equitable Servitude Claim*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

E.   *Denial of Attorney Fees*

Both the appeal and cross-appeal challenge the trial court's decision not to award attorney fees to either party. That part of the judgment is reversed.

---

[*]See footnote, *ante*, page 930.

## III

### Disposition

The judgment is reversed in all respects except as to the finding that the Association is liable to the Affans for damages of $33,800 for breach of an equitable servitude. The case is remanded for further proceedings in accord with the views expressed in this opinion. The Affans are entitled to costs on appeal.

Rylaarsdam, Acting P. J., and Fybel, J., concurred.

The petition of appellant Portofino Cove Homeowners Association for review by the Supreme Court was denied January 12, 2011, S188749.