Filed 3/24/15

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| KEN WATTS et al., | 2d Civil No. B240337 |
| Plaintiffs, Cross-defendants and Appellants, | (Super. Ct. No. CV060326) (San Luis Obispo County) |
| v. | |
| OAK SHORES COMMUNITY ASSOCIATION, | |
| Defendant, Cross-complainant and Respondent; | |
| ROBERT C. BURLISON, JR., | |
| Cross-defendant and Appellant. | |

Here we hold, among other things, that homeowners associations may adopt reasonable rules and impose fees on its members relating to short term rentals of condominium units.

Two owners of one lot in a common interest development and one of two owners of another lot brought an action challenging regulations and fees adopted by the homeowners association. The association cross-complained against all owners of both lots for fees and declaratory relief. The association prevailed on the complaint and cross-complaint. The trial court also awarded the association statutory attorney fees and costs on the complaint and cross-complaint. As we

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are identified as those portions between double brackets, e.g., [[/]].

explain in the unpublished portion of this opinion, the judgment must be clarified so that the attorney fees awarded on the complaint are against plaintiffs only, and not against the cross-defendant who was not a plaintiff. In all other respects, we affirm.

FACTS

Oak Shores is a single-family residential common interest development. It is governed by the Oak Shores Community Association (Association). The Association is governed by a board of directors (Board). All property owners in the development are members of the Association.

The Association's governing documents include its Covenants, Conditions and Restrictions (CC&R's) and its bylaws. The Board "may adopt, amend, or repeal Rules for the use, occupancy and maintenance of the Project; for the general health, welfare, comfort, and safety of Members; and to interpret and implement these CC&R's, and establish penalties for violation of such Rules." (CC&R's, art. 6.2.) "In the event the Association undertakes to provide materials or services that benefit a particular Member, such Member in accepting the materials or services agrees to reimburse the Association for the costs incurred by the Association, which shall become a Special Assessment against the Member." (*Id.*, art. 3.8.)

Oak Shores consists of 851 parcels of land. Six hundred sixty parcels are developed with single-family homes. Only about 20 percent, 125 to 150, of the homes are occupied by full-time residents. Approximately 66 absentee homeowners rent their homes to short-term vacation renters.

Ken and Joyce Watts and Lynda Burlison (collectively "Watts") are absentee owners who rent their homes to short-term vacation renters. Watts filed a complaint against Oak Shores challenging fees charged and rules and regulations enacted by the Association. The challenge included: a rule stating the minimum rental period is seven days; an annual fee of $325 imposed on owners who rent their homes; a rule limiting the number of automobiles, boats and other watercraft that

2

renters are allowed to bring into Oak Shores; a mandatory garbage collection fee; boat and watercraft fees; building permit fees; and property transfer fees.

[[The Association cross-complained against Watts and Robert Burlison, Jr., for unpaid fees and fines and for injunctive relief to require cross-defendants to comply with Association rules and regulations. At the time of filing, the Burlisons owed $2,355.06 in unpaid assessments and the Wattses owed $4,888.47. The Burlisons paid the assessment under protest. At the time of trial, the Wattses owed $10,264.]]

*Short-term Renters*

The Association has a rule stating that the minimum rental period is seven days. The Association's general manager testified that, based on his discussion with Board members, staff and code enforcement officers, as well as his review of gate and patrol logs, short-term renters cause more problems than owners or their guests. The problems include parking, lack of awareness of the rules, noise and use, and abuse of the facilities. Expert James Smith testified that, unlike guests who are typically present with the owners, short-term renters are never present with the owner. Guests tend to be less destructive and less burdensome. Short-term renters require greater supervision and increase administrative expenses.

A $325 fee is charged to all owners who rent their homes. A 2007 study calculated each rental cost the Association $898.59 per year.

*Watercraft*

All short-term renters and guests who bring watercraft into Oak Shores pay a fee of $25 per day or $125 per week. Short-term renters and guests are limited to one boat or two personal watercraft. Owners and long-term renters do not pay such special fees and are not limited in the number of watercraft they can bring into Oak Shores.

Boats have a negative impact on the Association's roads. There are also costs of maintaining the docks and parking lot used by the renters and increased costs for code enforcement.

Expert Smith testified that renters comprise only 8 percent of the people entering the gate, but renters bring in 37 percent of the boats.

*Parking Restrictions*

Association rules restrict parking in the lower marina lot to owners on weekends and holidays during the summer months. A lot not much further away is available to all.

*Construction Permits*

The Association charges a plan-check fee of $100 and a road impact fee of $1,600 for new construction. Expert Smith testified that heavy equipment used to construct homes places more wear on the roads and results in greater usage. It is appropriate to consider the need for reserves in determining the amount of the fee. The Board president testified that road resurfacing and repair are the basis for the fee.

*Trash Collection Fees*

The Association contracts with a trash collector. It passes the fees pro rata onto all owners of developed lots. The Association does not distinguish between full-time and part-time residences because it is too difficult to make that determination. It does not charge the owners of undeveloped lots because they do not produce trash.

*Former Civil Code Section 1366.1[1]*

Former section 1366.1 (repealed by Stats. 2012, ch. 180, § 1 and reinstated with nonsubstantive changes as § 5600, subd. (b)) provided, "An association shall not impose or collect an assessment or fee that exceeds the amount necessary to defray the costs for which it is levied."

David Levy and Travis Hickey are certified public accountants. Levy testified that the expenses generated by owners who rent short term far exceed the income generated from those owners. He analyzed fees and costs contained in the

---

[1] All statutory references are to the Civil Code unless noted otherwise.

4

Association's financial statements and reserve studies.  He concluded the fees charged were reasonable and complied with the law.  Levy also consulted with the Association's former auditors.  Levy and Hickey concluded that the fees were reasonable and did not violate former section 1366.1.  Levy also testified the fees charged by comparable associations for similar activities were higher or equivalent to fees charged by Oak Shores.

Hickey testified that he is the Association's former auditor.  He studied the fees and consulted with another former auditor.  He concluded the fees were fair, reasonable, and in compliance with the law.  They do not exceed the costs for which they are levied.  No association conducts a formal study to set fees.  Nor does any association conduct time and motion studies.  In fact, time and motion accounting is not possible.

Homeowners association expert Karen Conlon testified the Association met the standard of care for giving members notice of rule and fee changes.  Fee increases can be enacted by adopting a budget for the year.

*Swimming Pool*

The Association paid a pool contractor $35,000 to repair a swimming pool.  The contractor absconded with the money without repairing the pool.  A former director testified that a former Board president wrote a check to the contractor without Board approval.  Expert Smith testified it is not typical, nor within the standard of care, for an association to purchase a performance bond.

*Release and Unclean Hands*

[[Lynda Burlison filed a previous lawsuit against the Association.  Her complaint included an attack on the Association's CC&R's, rules and regulations restricting the use of her property for rental purposes.  She settled the suit for $3,000 and the Association's agreement to accept her suggestions for changes in the rental policies, rules and regulations.  As part of the settlement, she executed a release of all claims "known or unknown" arising out of the complaint.]]

Ken Watts has never obtained a business license to rent his home, nor has he paid transient occupancy taxes since at least 2000. He owes at least $5,000 in back taxes. Watts has repeatedly mischaracterized his renters as guests in order to avoid applicable rental rules and regulations. Portions of his testimony at trial were "demonstrably false." Throughout his tenure at Oak Shores, he has adopted a "rancorous, accusatory and obstructionist" style of interaction with Board members and staff. He has occasionally intimidated staff with bizarre and threatening behavior.

*Judgment*

The trial court found for the Association on the complaint. [[The court found Lynda Burlison had no standing because she had previously released her claims against the Association. The court found that the Wattses are denied relief under the doctrine of unclean hands. The court determined that, although all the inequitable conduct was committed by Ken Watts, Joyce Watts's claims are inextricably tied to those of her husband. Therefore, Joyce Watts is also denied relief.]] The court found that the Association's rules and regulations are reasonable and comply with the Association's governing documents and the law, and that the fees charged comply with former section 1366.1.

The trial court also found for the Association on the cross-complaint. It granted the Association an injunction ordering the cross-defendants to abide by the rules and regulations. [[It also granted the Association a money judgment against Ken and Joyce Watts in the amount of $10,264 plus interest for unpaid assessments.

The Association moved for an award of attorney fees pursuant to former section 1354, subdivision (c). "In an action to enforce the governing documents, the prevailing party shall be awarded reasonable attorney's fees and costs." (*Ibid.*, repealed by Stats. 2012, ch. 180, § 1, and reenacted without substantive changes as § 5975, subd. (c).) The trial court found the Association was the prevailing party in its efforts to enforce the governing documents, both as to the

6

complaint and cross-complaint.  The trial court awarded $1,180,646.50 for defending the complaint and $27,730 on the cross-complaint.]]

DISCUSSION

[[I.

On appeal, Watts does not challenge the trial court's findings that Lynda Burlison must be denied relief because she had previously released the Association from liability and that Ken and Joyce Watts are denied relief under the doctrine of unclean hands.  Watts's failure to raise the issues in his opening brief waives the issues on appeal.  (*Tisher v. California Horse Racing Bd.* (1991) 231 Cal.App.3d 349, 361.)  Because Lynda Burlison and the Wattses are the only plaintiffs, we must affirm the trial court's judgment denying any relief under their complaint.  We discuss the issues raised on appeal only as they relate to the cross-complaint and the award of attorney fees.]]

II.

Watts contends that the judgment is based on incorrect legal grounds.

Watts claims that the rule applying judicial deference to association decisions applies only to ordinary maintenance decisions.  But in *Lamden v. La Jolla Shores Clubdominium Homeowners Assn.* (1999) 21 Cal.4th 249, our Supreme Court stated, "'Generally, courts will uphold decisions made by the governing board of an owners association so long as they represent good faith efforts to further the purposes of the common interest development, are consistent with the development's governing documents, and comply with the public policy.'" (*Id.*, at p. 265, quoting *Nahrstadt v. Lakeside Village Condominium Assn., Inc.* (1994) 8 Cal.4th 361, 74.)  It is true the facts in *Lamden* involve the association board's decision to treat termites locally rather than fumigate.  But nothing in *Lamden* limits judicial deference to maintenance decisions.  Common interest developments are best operated by the board of directors, not the courts.

Watts's reliance on *Affan v. Portofino Cove Homeowners Assn.* (2010) 189 Cal.App.4th 930, is misplaced.  There, an owner sued the association for

7

failing to properly maintain the sewer lines. In applying judicial deference, the court stated that the *Lamden* rule gives "deference to the *reasoned decisionmaking* of homeowners association boards concerning ordinary maintenance." (*Affan*, at p. 940.) But there is no reason to read *Lamden* so narrowly. In fact, courts have given deference to board decisions that do not concern ordinary maintenance. Thus, for example, in *Dolan-King v. Rancho Santa Fe Assn.* (2000) 81 Cal.App.4th 965, 979, the court gave deference to an association board's decision denying an owner's application for a room addition on aesthetic grounds.

Article 3.8 of the CC&R's gives the Board broad powers to adopt rules for Oak Shores. Nothing in the article or elsewhere prohibits the Board from adopting rules governing short-term rentals, including fees to help defray the costs such rentals impose on all owners. The Board may reasonably decide that all owners should not be required to subsidize Watts's vacation rental business.

That short-term renters cost the Association more than long-term renters or permanent residents is not only supported by the evidence but experience and common sense places the matter beyond debate. Short-term renters use the common facilities more intensely; they take more staff time in giving directions and information and enforcing the rules; and they are less careful in using the common facilities because they are not concerned with the long-term consequences of abuse.

In arguing the cost of short-term rentals must be borne by all members, Watts cites California Code of Regulations, title 10, section 2792.16(a). That regulation provides, "Regular assessments to defray expenses attributable to the ownership, operation and furnishing of common interests by the Association shall ordinarily be levied against each owner according to the ratio of the number of subdivision interests owned by the owner assessed to the total number of interests subject to assessments." Watts's reliance on the regulation is misplaced for a number of reasons. First, the regulation applies to subdivision developers. Watts cites no authority that it also applies to continuing operations of a common interest development. Second, the regulation is qualified by the word "ordinarily." (*Ibid.*)

8

It clearly does not state an immutable rule. Third, the regulation applies to "[r]egular assessments." (*Ibid.*) Watts cites no authority that it applies to the type of use fees at issue here.

Watts's reliance on the Association's Articles of Incorporation, Article II, paragraph (d), is also misplaced. The paragraph under the heading "General Purposes" states in part: "To fix and establish the fees, dues and assessments that each member of this corporation shall pay to this corporation for the purpose of providing funds to carry out the community purposes and objects of this corporation, and to receive and collect such fees, dues and assessments[.]" Nothing in the paragraph provides that each member shall pay the same amount regardless of his or her activities on the premises. It does confirm, however, the power of the Association to impose fees as well as assessments. Thus, it confirms the power of the Association to impose the type of fees at issue here.

Watts's reliance on *Laguna Royale Owners Assn. v. Darger* (1981) 119 Cal.App.3d 670, 685 ("*Laguna Royale*") is misplaced. There, a common interest development was built on a 99-year ground lease. Defendants purchased a unit in the development. Later, defendants transferred undivided interests to three other families. No more than one family would use the unit at a time and each of the four families agreed to 13-week periods of exclusive use. The ground lease contained a provision prohibiting transfer of the unit without the development association's approval. The association refused to approve the transfer on the ground, among others, that use by the four families would place an undue burden on the other owners in their use and enjoyment of their units so as to be inconsistent with their quiet enjoyment and maintenance of security. The trial court invalidated the assignments. The Court of Appeal reversed.

In reversing, the Court of Appeal affirmed that the association had the authority to enact reasonable regulations on the use and alienation of the condominiums. (*Laguna Royale*, *supra*, 119 Cal.App.3d at p. 682.) The court also determined that the reason given for refusing consent to the transfer is rationally

9

related to the proper operation of the property and purposes of the association. (*Id.*, at p. 686.) The court concluded, however, there was no evidence that consecutive use of the unit by the four families one at a time would be so disruptive as to interfere substantially with the other owners' use and enjoyment or the maintenance of security. (*Id.*, at p. 687.) The court pointed out that the association's bylaws allowed leasing of a unit for 90 days or more, a use more intense than the 13 weeks excusive use agreed to by each of the four families. (*Ibid.*)

If anything, *Laguna Royale* is favorable to the Association. It confirms the authority of the Association to enact reasonable regulations governing transfers so as to preserve the owner's quiet enjoyment of the premises and the maintenance of security. There was simply no evidence in *Laguna Royale* that four 13-week periods of occupation by a single family would have a significant impact on the enjoyment of the premises by other owners or on security. Here there is more than ample evidence that short-term rentals have such significant impacts.

[[III.

Watts contends the judgment is not based on the evidence.

Watts's statement of facts cites the evidence in a light most favorable to himself. But that is not how we view the evidence.

In viewing the evidence, we look only to the evidence supporting the prevailing party. (*GHK Associates v. Mayer Group, Inc.* (1990) 224 Cal.App.3d 856, 872.) We discard evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by the trier of fact. (*Ibid.*) Where the trial court or jury has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 376, pp. 434-435.) The trier of fact is not required to believe even uncontradicted testimony. (*Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1028.) Watts's failure to state the evidence favorable to the judgment waives the contention on appeal. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)

10

In any event, Watts's only argument is that the uncontroverted evidence proved the Association's true purpose in enacting its rules and regulations is to keep Oak Shores private by making it expensive to rent. But Watts confuses uncontroverted evidence with credible evidence. The trier of fact may reject even uncontradicted evidence as lacking sufficient verity. (*Sprague v. Equifax*, *supra*, 166 Cal.App.3d at p. 1028.)]]

IV.

Watts contends the trial court erred in adopting the proportionality test in determining the reasonableness of the fees.

Former section 1366.1 prohibits an association from imposing or collecting "an assessment or fee that exceeds the amount necessary to defray the costs for which it is levied."

At trial, Watts argued the Association was required to conduct time and motion studies to determine the correct amount of the fees. The trial court rejected Watts's argument. In its statement of decision, the court stated the issue is whether "rough proportionality" between the fees and costs is sufficient to comply with the statute. The court found that the evidence established a "reasonably close" relationship between each contested fee and the cost it is intended to offset. The court concluded that relationship satisfied former section 1366.1.

Nothing in the language of former section 1366.1 requires the exact correlation between the fee assessed and the costs for which it is levied that Watts appears to demand. In some instances, such an exact correlation may be impossible to obtain. In other instances, the costs of studies necessary to obtain an exact correlation may be prohibitive, requiring the Association to add the costs to the fees. The "golden rule" for statutory interpretation is that where several alternative interpretations exist, the one that appears the most reasonable prevails. (*Stewart v. Bd. of Medical Quality Assurance* (1978) 80 Cal.App.3d 171, 179.) The most reasonable interpretation of former section 1366.1 is that it requires nothing more than a reasonable good faith estimate of the amount of the fee necessary to defray

11

the cost for which it is levied. Whether the court uses the term "roughly proportional" or "reasonably close," the test has been met here.

In *Foothills Townhome Assn. v. Christiansen* (1998) 65 Cal.App.4th 688, a homeowners association imposed a special assessment of $1,300 against each owner. The assessment was to replenish the association's reserve fund, which had been depleted paying for storm damage. The reserve fund could be used for purposes other than storm damage. An owner challenged the assessment as violating former section 1366.1. The court upheld the amount of the assessment on the ground that there was no showing that the usual reserve balance was excessive or that the amount of the assessment pushed the fund above its usual balance. (*Foothills*, at p. 694.) The court did not require a precise correlation between the amount of the assessment and the cost for which it was levied.

Watts argues that the Association should be bound by its admissions made during discovery that no studies to determine costs associated with the fees were conducted. The discovery to which Watts refers were interrogatories answered in February 2007. Trial began in April 2011. At trial, the Association produced evidence of studies that supported the fees. Watts points to no place in the record where the Association's witnesses were asked to explain the apparent discrepancy between the interrogatory responses and their testimony. Nor does Watts cite any authority in support of his argument requiring the trial court to reject the Association's evidence at trial. Watts has failed to carry his burden of showing error on appeal. (See *In re Marriage of Ananeh-Firempong* (1990) 219 Cal.App.3d 272, 278 [judgment presumed correct, error must be affirmatively shown].)

Watts claims that the garbage fees were initiated January 1, 2001, without ever being adopted by the Association as required by former section 1357.100, subdivision (a) (repealed by Stats. 2012, ch. 180, § 1, now § 4340). But that statute simply defines "'operating rule.'" (*Ibid.*) It does not set forth any particular procedure for adopting any rule. Moreover, it defines operating rule as a

"regulation."  (*Ibid.*)  The garbage fee is not a regulation.  It is simply a cost the Association passes through to the owners of the developed lots.

Watts claims the Board adopted or increased fees and fines by simply including them in the budget.  But he cites no authority prohibiting the Board from adopting or increasing fees and fines in that manner.

In any event, Watts's entire contention is based on a view of the evidence most favorable to himself.  Watts fails to cite the evidence most favorable to the judgment.  That evidence includes the testimony of Karen Conlon, an expert on homeowners associations.  She testified the Association met the standard of care on notice of rules and fee charges.  Board members also testified that Board meetings agenda and minutes were posted on the Association's website.  Watts has waived the contention on appeal.  (*Foreman & Clark Corp. v. Fallon*, *supra*, 3 Cal.3d at p. 881.)

[[V.

Watts contends the trial court abused its discretion in denying its motions in limine.

(a)

Watts argues the trial court should not have permitted the testimony of six "persons most qualified" ("PMQs") who were not designated during discovery.

During discovery, the Association designated Robert Lever as its PMQ for purposes of a deposition.  Bandy Smith, an Association manager, verified responses to written discovery.  Watts made a motion in limine to exclude Board member witnesses who were not designated as a PMQ.

In opposing the motion, the Association pointed out that the discovery designating its PMQ was made years prior to the trial.  Lever is no longer on the Board and is not an agent or employee of the Association.  In written discovery responses, the Association identified others with knowledge of the issues.  It even

13

provided Watts with a historical list of Board members, officers and employees. The trial court denied the motion.

Watts cites no authority to support his argument that the trial court abused its discretion. Moreover, preclusion discovery sanctions are generally not imposed unless a party fails to obey a discovery order or engages in repeated and willful refusal to permit discovery. (See *Maldonado v. Superior Court* (2002) 94 Cal.App.4th 1390, 1398-1399.) Watts points to none of those factors here.

(b)

Watts argues the trial court abused its discretion in granting the Association's motion in limine. The Association moved to exclude evidence that it breached its fiduciary duty by incurring $300,000 in attorney fees to pursue its cross-complaint. The cross-complaint was to recover the fees owing. Watts points out that the amount was within the jurisdiction of the small claims court.

Watts does not contest that the Association has the right and duty to collect all properly imposed fees and assessments. He cites no authority prohibiting the Association from retaining an attorney to enforce its rights. This case does not involve a simple question whether Watts had paid the fees. Instead, the case involves the more complex question whether the Association has the power to impose the fees. If enforcing the Association's rights to the fees cost $300,000, it is not because the Association breached a fiduciary duty; it is because Watts resisted paying lawfully imposed fees. Watts simply had no viable claim for a breach of fiduciary duty.

VI.

Watts contends the award of fees and costs was excessive. The trial court awarded the Association $1,180,646.50 on the complaint and $27,730 on the cross-complaint.

Former section 1354, subdivision (c) provided, "In an action to enforce the governing documents, the prevailing party shall be awarded reasonable attorney fees and costs." Watts argues the action did not involve a challenge to the

14

validity of the governing documents. It may be true that Watts did not challenge the validity of the governing documents. But the statute applies to actions to "enforce the governing documents." (*Ibid.*) Watts's action challenged the right of the Association to enforce the governing documents by enacting and attempting to collect fees and assessments pursuant to those documents. The action clearly comes within that statute. Thus an award of fees was appropriate.

Watts makes no challenge to any specific item of attorney fees and costs. Instead, he states that the award was punitive. He argues the court rewarded the Association for vigorously litigating the case in order to make a statement and precedence for future litigation.

Watts ignores that he initiated the action and vigorously litigated in order to make a statement and create precedence. Watts could have avoided all attorney fees and costs simply by declining to bring the instant unmeritorious action and by paying the Association the few thousand dollars it was properly demanding.

Watts claims the trial court found the cross-complaint should not have been brought. The trial court only stated it would have made "better sense" to obtain a tolling agreement, or file and stay the collection matter. But the Association had every right to bring the cross-complaint on which it unequivocally prevailed. The court did find the $250,000 the Association was requesting on the cross-complaint was excessive and awarded only $27,730. Robert C. Burlison, Jr., argues he was not a party to the complaint and thus fees on the complaint cannot be awarded against him. The trial court's ruling states that fees are awarded to Oak Shores. The trial court's ruling also states, "No request has been made to apportion this award." Nevertheless, the Association does not contest Burlison's point on appeal. The attorney fee portion of the judgment against Robert C. Burlison, Jr., must be modified to reflect that it is only on the cross-complaint.]]

The attorney fee portion of the judgment is ordered modified as discussed in the unpublished portion of the opinion. In all other respects, the

15

judgment is affirmed.  Costs on appeal are awarded to respondent and against all appellants.

CERTIFIED FOR PARTIAL PUBLICATION.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.

16

Charles S. Crandall, Judge

Superior Court County of San Luis Obispo

_____

Burlison Law Group and Robert C. Burlison, Jr., for Plaintiffs, Cross-defendants and Appellants and for Cross-defendant and Appellant.

Lewis Brisbois Bisgaard & Smith LLP, Roy G. Weatherup, Michael B. Wilk, Caroline E. Chan, Ryan D. Harvey; Adams Kessler PLC, Adrian J. Adams, Gary S. Kessler, Paul S. Ablon, Aide C. Ontiveros, Tina Chu for Defendant, Cross-complainant and Respondent.