Filed 8/19/14  Harper v. Canyon Hills Community Assn. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| JACKLYN HARPER, as Trustee etc., | |
| Plaintiff and Appellant, | G048445 |
| v. | (Super. Ct. No. 30-2011-0485525) |
| CANYON HILLS COMMUNITY ASSOCIATION et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from judgments of the Superior Court of Orange County, Kirk H. Nakamura, Judge.  One judgment affirmed.  One judgment reversed.

Law Offices of Dean Smart, Dean E. Smart, Ursula McDonnell; Broedlow Lewis, Jeffery Lewis and Kelly B. Dunagan for Plaintiff and Appellant.

Kulik Gottesman & Siegel, Leonard Siegel and Mitchell S. Brachman for Defendant and Respondent Canyon Hills Community Association.

The Coulombe Law Firm, Ronald B. Coulombe; Craig P. Kennedy & Associates and Craig P. Kennedy for Defendants and Respondents David A. Valentine and Patricia A. Valentine.

Plaintiff Jacklyn Harper, as trustee for The Marigold Trust (Harper), appeals from the following two judgments entered in the underlying action: (1) For defendant Canyon Hills Community Association (Canyon Hills) after the trial court granted its motion for summary judgment; and (2) for defendants David A. Valentine and Patricia A. Valentine (the Valentines) after the court granted their motion for judgment on the pleadings and denied Harper's motion for leave to amend her complaint. The appeals have been consolidated for decision. We reverse the judgment for Canyon Hills, but affirm the judgment for the Valentines.

FACTS AND PROCEDURAL BACKGROUND

Canyon Hills is a nonprofit corporation operating a common interest development consisting of the residential properties within the association's boundaries. It is governed by a five-member board of directors (the board). All of the lots are subject to a recorded declaration of covenants, conditions and restrictions (CC&Rs).

Article VII of the CC&Rs provides for the creation of an architectural committee and requires homeowners wanting to make structural changes to their home or modify their lot's landscaping to submit plans for the proposed change and obtain the committee's approval before doing so. Section 1 of Article VII declares, "No building . . . shall be commenced . . ., nor shall any exterior addition to or change or alteration therein . . . be made until the plans and specifications showing the nature, kind, shape, height, materials, and location . . . have been submitted to and approved in writing as to harmony of external design and location in relation to surrounding structures and topography by the . . . committee . . . ."

The board subsequently enacted Architectural and Landscaping Guidelines, Standards and Application (Guidelines) concerning proposed changes. The introduction to the Guidelines states they were "merely guidelines rather than rules in that they set

2

forth the minimum standards," and "[m]ore stringent requirements may be appropriate for particular improvements and modifications being sought by the applicant."

Harper and the Valentines are members of Canyon Hills who own adjoining lots. In 2006, the Valentines applied for permission to tear down their existing two-story home and replace it with another two-story 10,800 square foot residence. The Valentines showed Harper and other neighbors drawings of the proposed home and landscaping. Harper signed forms mandated by the Guidelines (neighbor awareness forms) that stated she had been informed of the residential and landscaping changes. She acknowledged not objecting to this proposal, but her declaration opposing Canyon Hills's summary judgment motion stated that when the Valentines showed her the plans she "was not shown any reference to how the proposed construction related to other neighboring properties including mine," nor was she informed the proposed home's "location was being altered to be much closer to my house . . . ."

The plans were reviewed by Canyon Hills's architect. After receiving the architect's comments, the board reviewed them as well and, with some variances from the standards contained in the Guidelines, approved the construction of the new home. The City of Newport Beach also approved the plans and issued the necessary permits.

The Valentines never proceeded with this project. Rather, in 2009 they withdrew it and filed a new application to build a 5,528 square foot single-story home. Along with the second application, the Valentines submitted neighbor awareness forms purportedly containing the signatures of Harper and their other neighbors. In November, the board approved the revised project and the city issued the necessary permits.

Construction of the new home began in May 2010. Harper claimed she first noticed the construction activity in June or July and attempted to contact the association's property management company. In January 2011, she appeared before the board and complained about the construction of the Valentines's new home. Harper

3

claimed she had never been informed of the 2009 application, believed the new residence encroached on her property, and that it would reduce the value of her home.

After hearing Harper's objections, the board conducted a review of the Valentines's application. The association's property manager contacted other neighbors and learned they had not been given the opportunity to review the Valentines's 2009 development proposal for the home. A letter was sent to the Valentines directing them to appear before the board and discuss the matter. After David Valentine made an appearance, the board chose to allow construction work to proceed.

Harper filed this action against both Canyon Hills and the Valentines. The complaint stated causes of action for negligence, breach of covenants, nuisance, and declaratory relief against all defendants. In addition, it alleged a cause of action for breach of fiduciary duty against Canyon Hills and causes of action for fraud and elder abuse against the Valentines.

In support of these counts, Harper alleged the Valentines's second proposal had "radically different characteristics that would violate the senses and cognitive and emotional enjoyment of" a person "similarly situated as" her. When they submitted the second application, the Valentines used the neighbor awareness forms signed by her and other neighbors for the original proposal, thereby "circumventing the proper architectural application process [and] leaving [her] without know[ledge] of [their] true intent . . . ." She further alleged Canyon Hills's board "knew or should have known . . . [she] and other [neighbors] . . . had not received notice of" the second proposal, that it "would significantly and negatively affect the [n]eighbors" and, by "approv[ing] the . . . second set of plans without following or complying with all requirements provided in [the association's] governing documents," the board breached its "duty of reasonable care and [a] fiduciary duty . . . to protect the value of the [n]eighbors' homes" "by requiring modifications" of the "colossal size" of the Valentines's second proposal "to militate the negative affect and injury . . . ."

4

Canyon Hills and the Valentines separately answered the complaint. Initially, both also moved for summary judgment. The Valentines then withdrew their summary judgment motion and filed a motion for judgment on the pleadings.

Harper sought a continuance and moved to file a first amended complaint that proposed to add two board members as named defendants and expand on her theory of liability under the CC&Rs and the Guidelines. The trial court denied the motion to amend to the extent it sought to add additional defendants, but granted it to the remainder of the proposed amendments subject to the condition that the Canyon Hills's summary judgment motion and the Valentines's motion for judgment on the pleadings were both denied.

Two months later however, the court granted both motions. On the summary judgment motion, the court held the board's decision to approve the project was subject to the rule of judicial deference applicable to homeowner's associations, and that Harper had failed to meet her burden to defeat the presumption the board acted in good faith and for the association's best interests. The court further held that, upon learning Harper's complaint about the purportedly forged 2009 neighborhood awareness forms, the board satisfied its duty by "canvass[ing] the [Valentines's] neighbors to determine if they had objections" to the construction of the one-story home.

On the Valentines's motion for judgment on the pleadings, the court agreed with Harper that she was a third party beneficiary of Canyon Hills's Guidelines and that the Valentines were obligated to show her the 2009 plans for the one-story residence. But it took judicial notice of the fact Harper's opposition to Canyon Hills's summary judgment motion "presented no admissible evidence that the Valentines'[s] plans violated any provisions of [Canyon Hills's] . . . ('CC&Rs,')" and held that neither Harper's original complaint nor her proposed first amended complaint "expressly allege that" (1) "if she had known of the . . . plans, she would have filed objections with the . . . [b]oard," and (2) "her objections would have made a difference."

5

DISCUSSION

## 1. *The Judgment for Canyon Hills*

### *a. Standard of Review*

"Any party may move for summary judgment in any action or proceeding if it is contended that the action has no merit or that there is no defense to the action or proceeding." (Code Civ. Proc., § 437c, subd. (a).) To succeed on a motion for summary judgment, a defendant must establish "that a cause of action has no merit" by showing "one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).)

"Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion. [Citation.] '"We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained."'" (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.) "[S]ummary judgment is a drastic procedure and should be used with caution." (*Committee to Save the Beverly Highlands Homes Assn. v. Beverly Highlands Homes Assn.* (2001) 92 Cal.App.4th 1247, 1260.) "In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing her evidentiary submission while strictly scrutinizing defendant[']s own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor." (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

### *b. Analysis*

Harper contends the trial court's summary judgment ruling is erroneous for several reasons. First, she claims the court's reliance on the decision in *Lamden v. La*

6

*Jolla Shores Clubdominium Homeowners Assn.* (1999) 21 Cal.4th 249 (*Lamden*), which established a rule of judicial deference for homeowners associations' common area maintenance decisions, was error. Thus, she argues the trial court erred by imposing on her the burden to disprove that Canyon Hills's board acted in good faith. Next, she attacks the trial court's ruling the board satisfied its obligation to investigate her forgery claim by canvassing the Valentines's neighbors to determine whether others objected to the revised construction project. Finally, Harper challenges the trial court's rulings on evidentiary objections to the documentation related to the summary judgment motion. Canyon Hills claims the trial court's rulings should be affirmed.

We agree the trial court erred by deferring to the board's decision and requiring her to raise a triable issue as to whether the board acted in good faith. "It is a settled rule of law that homeowners' associations must exercise their authority to approve or disapprove an individual homeowner's construction or improvement plans in conformity with the declaration of covenants and restrictions, and in good faith. . . . 'The converse should likewise be true, . . . "[T]he power to approve plans . . . must not be exercised capriciously or arbitrarily."'" (*Cohen v. Kite Hill Community Assn.* (1983) 142 Cal.App.3d 642, 650; see *Hannula v. Hacienda Homes* (1949) 34 Cal.2d 442, 447.) Thus, "[w]hen a homeowners' association seeks to enforce the provisions of its CCRs to compel [or approve] an act by one of its member owners, it is incumbent upon it to show that it has followed its own standards and procedures prior to pursuing such a remedy, that those procedures were fair and reasonable and that its substantive decision was made in good faith, and is reasonable, not arbitrary or capricious." (*Ironwood Owners Assn. IX v. Solomon* (1986) 178 Cal.App.3d 766, 772; see *Pacific Hills Homeowners Association v. Prun* (2008) 160 Cal.App.4th 1557, 1565-1566.)

Canyon Hills relies on the Supreme Court's decisions in *Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361 and *Lamden, supra,* 21 Cal.4th 249 to argue the trial court was correct in deferring to the decisions by its board

7

and architectural committee approving the Valentines's second construction proposal and rejecting Harper's challenge to it. But these authorities do not support a conclusion that when a common interest association acts under its governing documents, the burden of establishing whether it did so in good faith is shifted to the party challenging the association's decision.

Under the Davis-Stirling Common Interest Development Act (former Civ. Code, §§ 1350 et seq., repealed by Stats. 2012, ch. 180, § 1, operative Jan. 1, 2014; now Civ. Code, § 4000 et seq.), a common interest development's recorded declaration (i.e. CC&Rs) are "enforceable equitable servitudes, *unless unreasonable . . . .*" (Italics added.) (Civ. Code, § 5975, subd. (a); all further statutory references to the Act are to the current law.) *Nahrstedt v. Lakeside Village Condominium Assn., supra,* 8 Cal.4th 361 upheld a provision in a common interest development's recorded CC&Rs that barred pets. Citing the emphasized statutory language, *Nahrstedt* ruled it "cloaked use restrictions contained in a . . . development's recorded declaration with a presumption of reasonableness by shifting the burden of proving otherwise to the party challenging the use restriction." (*Id.* at p. 380.) In contrast to *Nahrstedt*, Harper is seeking to enforce the association's governing documents. She argues Canyon Hills's architectural committee and the board failed to comply with its CC&Rs and architectural guidelines when approving the Valentines's second construction request.

*Lamden, supra,* 21 Cal.4th 249 rejected a legal challenge to an association board's decision to discharge its repair and maintenance of common areas obligation by employing spot treatment rather than fumigation to deal with termite infestation. It declared that, regardless of a common interest development's corporate status, "Where a duly constituted community association board, upon reasonable investigation, in good faith and with regard for the best interests of the community association and its members, exercises discretion within the scope of its authority under relevant statutes, covenants and restrictions to select among means for discharging an obligation to maintain and

8

repair a development's common areas, courts should defer to the board's authority and presumed expertise." (*Id.* at pp. 253, 260.)

But *Lamden's* holding is not as expansive as Canyon Hills and the trial court assume. In *Affan v. Portofino Cove Homeowners Assn.* (2010) 189 Cal.App.4th 930, we recognized "the narrow scope of the *Lamden* rule," noting "It is a rule of deference to the *reasoned decisionmaking* of homeowners association boards concerning ordinary maintenance" and "does not create a blanket immunity for all the decisions and actions of a homeowners association." (*Affan v. Portofino Cove Homeowners Assn., supra,* 189 Cal.App.4th at p. 940.) And in *Ekstrom v. Marquesa at Monarch Beach Homeowners Assn.* (2008) 168 Cal.App.4th 1111, we described *Lamden's* rule of judicial deference as being "in the nature of an affirmative defense," (*id.* at p. 1122), and held "[a] defense of good faith is necessarily factual in nature" (*id.* at p. 1123). Thus, under *Lamden*, "judicial deference is owed only when it has been shown the Association acted after 'reasonable investigation, in good faith and with regard for the best interests of the community association and its members.'" (*Ekstrom v. Marquesa at Monarch Beach Homeowners Assn., supra,* 168 Cal.app.4th at pp. 1122-1123.)

Our conclusion the trial court erred by holding Harper had the burden to present evidence defeating the presumption that Canyon Hills acted in good faith is even more applicable in this case because the gravamen of her lawsuit concerns the board's purported noncompliance with the association's *subsequently enacted and unrecorded* Guidelines. While she broadly alleges the board violated the CC&Rs, the trial court found she presented no admissible evidence the Valentines's construction of a one-story home in place of their former two-story residence violated the CC&Rs. Her specific objections focus on the lack of notice of the revised proposal, the encroachment on her property, and that the new home would reduce the value of her property. The CC&Rs provide for the creation of the architectural committee and generally refer to the factors it must consider before approving a homeowner's proposal to construct improvements, but

9

the CC&Rs do not otherwise specify what is architecturally allowed or prohibited. Those details are covered by the Guidelines.

*Nahrstedt* recognized "use restrictions" other than a common interest development's CC&Rs "should be subject to a 'reasonableness' test, so as to 'somewhat fetter the discretion of the board of directors.'" (*Nahrstedt v. Lakeside Village Condominium Assn., supra,* 8 Cal.4th at p. 376.) Civil Code section 4350 also declares a common interest development's operating rules are "valid and enforceable only if" certain "requirements are satisfied," including the qualification that a "rule is reasonable." (Civ. Code, § 4350, subd. (e).) Even *Lamden* recognized "the factors justifying such deference [to CC&Rs] will not *necessarily* be present when a court considers subsequent, unrecorded community association board decisions." (*Lamden, supra,* 21 Cal.4th at p. 264.)

It is true that "California and many other jurisdictions have long upheld such general covenants vesting broad discretion in homeowners associations or boards to grant or withhold consent to construction." (*Dolan-King v. Rancho Santa Fe Assn.* (2000) 81 Cal.App.4th 965, 977.) But here, the question is whether Canyon Hills carried its burden of persuasion to establish its board acted in good faith and in accordance with the Guidelines in both investigating the Valentines's possible forgery and deciding whether to allow their construction project to proceed. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850-851.)

Canyon Hills presented evidence in support of a finding that it acted in good faith when approving the Valentines's second application and in allowing the construction to proceed after Harper addressed the board. This evidence consisted of declarations, documentary evidence, and portions of testimony from depositions. But Harper's opposition to Canyon Hills's summary judgment included portions of deposition testimony from board members, the association's architect, and others that disputed the assertion of good faith.

10

The purpose of a summary judgment motion is issue finding, not issue determination. (*Mann v. Cracchiolo* (1985) 38 Cal.3d 18, 36; *Martens v. Winder* (1961) 191 Cal.App.2d 143, 149.) The moving party is entitled to relief only when "there is no triable issue as to any material fact and [it] is entitled to judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c). To satisfy this requirement in this case Canyon Hills needed to "present evidence that would require a reasonable trier of fact *not* to find any underlying material fact more likely than not—otherwise, [*it*] would not be entitled to judgment *as a matter of law*, but would have to present [*its*] evidence to a trier of fact." (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 851, fn. omitted.)

The trial court erred in holding its board's actions were entitled to a presumption of correctness and by placing the burden of proof on Harper to show a lack of good faith on its part. Thus, we conclude the judgment for Canyon Hills must be reversed.

2. *The Judgment for the Valentines*

      *a. Standard of Review*

A court may grant a defendant's motion for judgment on the pleadings where the complaint fails to state facts sufficient to constitute a cause of action against it. (Code Civ. Proc., § 438, subd. (c)(B)(ii).) "The grounds for the motion must appear on the face of the challenged pleading or from matters that may be judicially noticed. [Citation.] The trial court must accept as true all material facts properly pleaded, but does not consider conclusions of law or fact, opinions, speculation, or allegations contrary to law or facts that are judicially noticed." (*Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate Services, Inc.* (2006) 138 Cal.App.4th 1215, 1219-1220.)

"We independently review the trial court's ruling on a motion for judgment on the pleadings to determine whether the complaint states a cause of action. [Citation.] In doing so, we accept as true the plaintiff's factual allegations and construe them

11

liberally.  [Citation.]  If the trial court's ruling on a motion for judgment on the pleadings is correct upon any theory of law applicable to the case, we will affirm it, even if we may disagree with the trial court's rationale."  (*Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate Services, Inc., supra,* 138 Cal.App.4th at p. 1220.)

### b. Analysis

Harper's complaint and amended complaint alleged causes of action for negligence, breach of covenants, nuisance, fraud, elder abuse, and declaratory relief against the Valentines.  Her opening brief does not challenge the trial court's dismissal of her claims for nuisance and elder abuse.  The failure to assert the validity of these counts in her brief results in a waiver of them.  (*Tilbury Constructors, Inc. v. State Comp. Ins. Fund* (2006) 137 Cal.App.4th 466, 482 [points not raised in appellate brief need not be addressed].)  Although her reply brief does argue she stated a valid cause of action for nuisance, because Harper withheld argument on this point until after the Valentines filed their respondent's brief, we follow the general "'"rule . . . that points raised in the reply brief for the first time will not be considered . . . .'"''"  (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.)

On the merits, each of the remaining causes of action is based on the Valentines's purported violation of the CC&Rs and the Guidelines.  The court judicially noticed Harper failed to "present[] . . . admissible evidence that the Valentines's plans violated any provisions of [Canyon Hills's] . . . ('CC&Rs')" in opposing Canyon Hills's summary judgment motion.  Since we agree with this conclusion, the sole basis for her claims against the Valentines is their purported noncompliance with the Guidelines.

The trial court found Harper could sue the Valentines for their alleged violation of the Guidelines under a third party beneficiary theory, but granted the motion because Harper failed to allege, in either her original complaint or the proposed amended complaint, that she would have objected to the single story development application had

12

she been notified about it and that her objection would have changed the board's decision. On appeal, the Valentines reassert their claim Harper lacks standing to sue them for noncompliance with the Guidelines. We conclude the trial court erred in ruling Harper had standing to sue.

Standing is an issue that may be raised by a challenge to the sufficiency of the complaint. (*Carsten v. Psychology Examining Com.* (1980) 27 Cal.3d 793, 796 [demurrer]; *Farber v. Bay View Terrace Homeowners Assn.* (2006) 141 Cal.App.4th 1007, 1013 [motion for judgment on the pleadings].) Civil Code section 5975, subdivision (a) declares that, "[u]nless the declaration states otherwise," a common interest development's "declaration . . . may be enforced by any owner of a separate interest or by the association, or by both." But "[a] *governing document other than the declaration* may be enforced *by the association against an owner* of a separate interest *or by an owner* of a separate interest *against the association*." (Civ. Code, § 5975, subd. (b), italics added.) "In construing a statute, we look for legislative intent, '"turn[ing] first to the words themselves for the answer." [Citation.]' [Citation.] 'The words used should be given their usual, ordinary meanings and, if possible, each word and phrase should be given significance.'" (*Kaplan v. Fairway Oaks Homeowners Assn.* (2002) 98 Cal.App.4th 715, 719.)

The "declaration" mentioned in Civil Code section 5975, subdivision (a) refers to a common interest development's recorded CC&Rs. (Civ. Code, §§ 4135 ["'Declaration' means the document, however denominated, that contains the information required by Section[] 4250"]; & 4255 [specifying contents of a recorded declaration].) The phrase "'[g]overning documents'" is defined as "the declaration *and any other documents, such as bylaws, operating rules, articles of incorporation, or articles of association, which govern the operation of the common interest development or association.*" (Civ. Code, § 4150, italics added.) Thus, while subdivision (a) of Civil Code section 5975 allows enforcement of the recorded CC&Rs by an owner, the

13

association, or both, subdivision (b) of that statute limits enforcement of the other governing documents to actions "by the association against an owner . . . or by an owner . . . against the association." (Civ. Code, § 5975, subd. (b).)

Harper, as a Canyon Hills homeowner, is seeking to enforce the Guidelines, not against Canyon Hills, but the Valentines who are also homeowners. The statutory framework does not allow her to bring this action against them.

Harper cites cases she claims support the right of one owner to sue another to enforce a governing document such as the Guidelines. Two of these cases did not involve an action by one owner against another owner. (*Kaplan v. Fairway Oaks Homeowners Assn., supra* 98 Cal.App.4th 715 [several homeowners against the association]; *MaJor v. Miraverde Homeowners Assn.* (1992) 7 Cal.App.4th 618 [action by property owners against association].)

The third case, *Posey v. Leavitt* (1991) 229 Cal.App.3d 1236, concerned an interpretation of a condominium's recorded declaration. The Leavitts, owners of one unit built an extension to their deck that encroached on the development's common area. Later, the association's board ratified the deck extension. Posey sued both the Leavitts and the association, claiming the deck extension constituted a trespass. The Leavitts cited a provision of the declaration allowing an owner to alter his or her unit with the "'written consent of the Board.'" (*Id.* at p. 1246.) The Court of Appeal disagreed, noting "an encroachment into the common area impairs the easements of the other owners . . . and thus requires the consent of all of the homeowners," and Posey's interest as an owner was "a possessory right superior to the right of all trespassers." (*Id.* at p. 1246.) The court also recognized, "Under well-accepted principles of condominium law, a homeowner can sue the association for damages and an injunction to compel the association to enforce the provisions of the declaration. [Citation.] More importantly here, the homeowner can sue directly to enforce the declaration." (*Id.* at pp. 1246-1247.)

14

In *Posey*, the plaintiff challenged his neighbors' deck extension because it violated the CC&Rs by encroaching on the development's common area and the violation could not be ratified without the consent of all the homeowners in the association. Harper is challenging Canyon Hills's approval of the Valentines's construction plan to build a new home on their own lot. But, at best, the approval contravened only the Guidelines. Thus, *Posey* fails to support Harper's right to sue the Valentines.

The trial court's reliance on a third party beneficiary theory cannot be sustained. Civil Code section 1559 declares "[a] contract, made expressly for the benefit of a third person, may be enforced by him . . . ." But a party claiming to be the third party beneficiary "is subject to the ordinary rules governing a party to a contract." (*Conrad v. Thompson* (1955) 137 Cal.App.2d 73, 77.) Here, nothing indicates the Guidelines constitute a contract. Further, as discussed above the Davis-Stirling Common Interest Development Act expressly limits an owner seeking to enforce governing documents other than the recorded declaration to an action against the association. (Civ. Code, § 5975, subd. (b); see *Saks v. Damon Raike & Co.* (1992) 7 Cal.App.4th 419, 431 [under Probate Code "no authority . . . permit[s] trust beneficiaries to maintain an action as third party beneficiaries of contracts between the trustee and agents of the trustee concerning the internal affairs of the trust"].) The Guidelines state they were adopted "to establish the procedure for submitting plans to the Architectural Committee for its review and approval." The trial court erred in relying on the third party beneficiary theory to give Harper standing against the Valentines.

While we disagree with the trial court's reasons for its ruling on the Valentines's motion for judgment on the pleadings, we nonetheless conclude it reached the correct result. (*Koch v. Speedwell Motor Car Co.* (1914) 24 Cal.App. 123, 126 ["if the defendant's demurrer be well taken upon any ground the order sustaining the demurrer will be affirmed, regardless of the reasons assigned therefor by the court below"]; see *Conservatorship of McQueen* (2014) 59 Cal.4th 602, 612 ["a trial court's

15

order will ordinarily be upheld if it is legally correct on any basis"].) Thus, the trial court's decision on this motion was not an abuse of its discretion.

## DISPOSITION

The judgment in favor of respondents David and Patricia Valentine is affirmed and they shall recover their costs on appeal. The judgment in favor of respondent Canyon Hills is reversed and that matter is remanded to the superior court for further proceedings not inconsistent with this opinion. Appellant shall recover her costs on appeal related to the judgment for respondent Canyon Hills.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

ARONSON, J.

IKOLA, J.

16