[No. G035607. Fourth Dist., Div. Three. Jan. 23, 2007.]

KEMP BROS. CONSTRUCTION, INC., Plaintiff and Respondent, v. TITAN ELECTRIC CORPORATION, Defendant and Appellant.

## COUNSEL

Ross, Dixon & Bell, Jon R. Williams and Lindsay J. Reese for Defendant and Appellant.

Kellam & Biedebach, Newton W. Kellam and James W. Biedebach for Plaintiff and Respondent.

## OPINION

**IKOLA, J.**—" 'Attachment is an ancillary or provisional remedy to aid in the collection of a *money demand* by seizure of property *in advance of trial and judgment*.' " (*Doyka v. Superior Court* (1991) 233 Cal.App.3d 1134, 1137 [285 Cal.Rptr. 14].) California's Attachment Law (Code Civ. Proc., § 482.010 et seq.)[1] is purely statutory and is strictly construed. (*Bank of America v. Salinas Nissan, Inc.* (1989) 207 Cal.App.3d 260, 270 [254 Cal.Rptr. 748].) As germane here, a plaintiff seeking a right to attach order must show " 'the probable validity' " of its claim. (*Id.* at p. 271.) "A claim has 'probable validity' where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim." (§ 481.190.)

In this case, Kemp Bros. Construction, Inc. (Kemp), a prime contractor on two public works projects, sued its former subcontractor, Titan Electric Corporation (Titan), for breach of contract, and sought a pretrial right to attach order. The court found Kemp was entitled to the remedy, not because Kemp had affirmatively shown the probable validity of its claim or established other requisite criteria, as was its burden, but because Titan could not

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

"re-litigate" the issue of its breach of contract. The court's allusion to the preclusive effect of prior litigation referred to a proceeding at which a Los Angeles Unified School District (LAUSD) hearing officer determined Kemp had grounds under Public Contract Code section 4107, subdivision (a)(3) and (7),[2] for substituting Titan out of its subcontract.

The court erred. "Collateral estoppel is an equitable concept based on fundamental principles of fairness. For issue preclusion purposes it means that a party ordinarily may not relitigate an issue that was *fully and fairly litigated* on a previous occasion." (*Sandoval v. Superior Court* (1983) 140 Cal.App.3d 932, 941 [190 Cal.Rptr. 29], italics added.) The only purpose of the prior proceeding was to determine if Kemp had permissible *statutory* grounds to substitute another electrical contractor on the public works projects. Nothing in the record supports an inference, much less a conclusion, that the hearing officer decided breach of contract issues or that such issues were even submitted to him. There is simply no basis for concluding the parties fully and fairly litigated the issue of Titan's alleged breach of the subcontract.

Ordinarily, when the court gives an incorrect legal reason for its ruling, we look for any other correct legal basis on which to sustain the order. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 980–981 [35 Cal.Rptr.2d 669, 884 P.2d 126]; *Mayflower Ins. Co. v. Pellegrino* (1989) 212 Cal.App.3d 1326, 1332 [261 Cal.Rptr. 224] ["a correct decision of the trial court must be affirmed, even if the grounds upon which the trial court reached its conclusion are not correct"].) One of the "other" bases for affirmance is substantial evidence, which allows us to make certain presumptions supporting the result. (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 610 [109 Cal.Rptr.2d 256].) However, where, as here, a respondent argues for affirmance based on substantial evidence, the record must show the court *actually performed* the factfinding function. Where the record demonstrates the trial judge did not weigh the evidence, the presumption of correctness is overcome. (*Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 39 Cal.App.4th 1379, 1384 [46 Cal.Rptr.2d 542] ["When the record clearly demonstrates what the trial court did, we will not presume it did something different"].) As stated in *Estate of Larson* (1980) 106 Cal.App.3d 560, 567 [166 Cal.Rptr. 868], "The [substantial evidence] rule thus operates only where it can be presumed that the court has performed its function of

---

[2] Respectively, the referenced provisions allow substitution "[w]hen the listed subcontractor fails or refuses to perform his or her subcontract" (Pub. Contract Code, § 4107, subd. (a)(3)), and "[w]hen the awarding authority, or its duly authorized officer, determines that . . . the subcontractor is substantially delaying or disrupting the progress of the work." (Pub. Contract Code, § 4107, subd. (a)(7).)

weighing the evidence. If analysis of the record suggests the contrary, the rule should not be invoked."

Such is the case before us, where both the minute order and the reporter's transcript demonstrate the court never engaged in the process of weighing the evidence because it improvidently agreed with Kemp's argument that Titan was barred from "re-litigat[ing]" the issue of its alleged breach of contract and ruled accordingly. For that reason, we reverse and remand with directions to the court to weigh the factors relevant to Kemp's burden of showing entitlement to the attachment order. In exercising its discretion, the court "must consider the relative merits of the positions of the respective parties and make a determination of the probable outcome." (*Loeb & Loeb v. Beverly Glen Music, Inc.* (1985) 166 Cal.App.3d 1110, 1120 [212 Cal.Rptr. 830].)

## FACTS

As a preliminary matter, at the time of oral argument, we considered Kemp's motion to file a late brief and submitted it for determination in conjunction with our disposition of the appeal on the merits. We further allowed Kemp to present its argument conditionally, subject to being stricken depending on our decision whether to allow the late filing of Kemp's brief. (See Cal. Rules of Court, rule 8.220(a)(2).) We now grant Kemp's motion. Because Kemp's brief was presented to the court and Titan's counsel only days before oral argument, Titan requested an opportunity to file a reply brief prior to our submission of the case. However, we deem a reply brief unnecessary: Titan carried its burden of affirmatively establishing reversible error in its opening brief and at oral argument.

Turning to the facts, we remind the parties it is not our role to engage in an assessment of the evidence, and our summary does not establish the truth of any facts for any purpose. We simply place the controversy in context by reciting relevant material as variously alleged or attested in the pleadings and papers in the court's file, including those documents of which Titan and Kemp have requested we take judicial notice. (Evid. Code, § 452, subd. (d).) On remand, neither party may derive any evidentiary benefit or suffer any detriment from our recitation.

*The Electrical Subcontracts and Events Leading to Kemp's Substituting Titan Out*

In March 2003, Kemp entered into two prime contracts with the LAUSD for public works improvement projects at Huntington Park Elementary

School and the Los Angeles Center for Enriched Studies (LACES). Under subcontracts valued at more than $2 million, Titan agreed to furnish labor, material, and equipment necessary for the electrical portion of both projects.

All went well for a while, but in February 2004, for reasons that are in dispute, Kemp agreed to advance payroll payments to Titan for certain workers on the Huntington project. The advances were to be drawn against Titan's accounts receivable for work Titan had already completed. Kemp made the payments until the latter part of April, then ceased. When Titan could not meet the payroll on its own, its employees stopped working. Kemp hired A&R Electric (A&R) to replace Titan on the two projects, and by the afternoon of April 29, 2004, A&R, essentially using Titan's equipment and former employees, began performing the electrical work covered by Titan's subcontract.

*The Substitution Hearing*

On the same day, April 29, 2004, Kemp submitted a request to LAUSD to authorize the substitution of A&R on both the Huntington and LACES projects. The proceeding is statutory, falling under the Subletting and Subcontracting Fair Practices Act, Public Contract Code section 4100 et seq., which, in pertinent part, confers a statutory right on the subcontractor originally listed by the prime contractor to perform the specified work. (Pub. Contract Code, § 4107; *R.J. Land & Associates Construction Co. v. Kiewit-Shea* (1999) 69 Cal.App.4th 416, 421 [81 Cal.Rptr.2d 615].) Substitution of another subcontractor for the designated subcontractor is not allowed "unless the awarding authority consents and one of certain situations exists." (*Valley Crest Landscape, Inc. v. City Council* (1996) 41 Cal.App.4th 1432, 1438 [49 Cal.Rptr.2d 184].) The circumstances justifying substitution, as relevant here, are set forth in Public Contract Code section 4107, subdivision (a)(3) ("[w]hen the listed subcontractor fails or refuses to perform his or her subcontract"), and (7) ("[w]hen the awarding authority, or its duly authorized officer, determines that . . . the subcontractor is substantially delaying or disrupting the progress of the work").

Titan objected to the substitution. The matter was set for hearing before Mark Hovatter, an engineer and director of LAUSD's facilities contracts. By the time the hearing went forward in August 2004, both the Huntington and LACES projects had been completed by A&R and another electrical contractor. In November, Hovatter issued two decisions approving Kemp's substitu-

tion of Titan on both projects. Hovatter found, "An informal arrangement had been made between Kemp and Titan under which Kemp advanced payments to Titan from February 2004 through April 2004. This was an arrangement above and beyond their contractual requirement and being done by Kemp because they believed it was in their best interest. When Kemp chose to discontinue this action, Kemp was not in violation of its contractual requirement to pay Titan. [¶] Once Kemp discontinued their arrangement of early payments to Titan, Titan employees abandoned the project because they had not been paid by Titan. It was apparent during the hearing that Titan made no reasonable effort to timely complete the work Kemp could reasonably expect Titan to perform." Hovatter granted Kemp's request to substitute Titan as subcontractor on both projects under Public Contract Code section 4107, subdivision (a)(3) and (7).

*Kemp's Lawsuit and Application for Writ of Attachment*

Kemp then filed a civil action against Titan, alleging breach of contract as to both projects and seeking some $1.5 million in damages. The same day it filed its complaint, Kemp sought an ex parte right to attach order against Titan's accounts receivable, alleging it had heard from a third party that Titan was going to receive a seven-figure settlement in another matter and the anticipated asset had to be earmarked quickly for Kemp's benefit lest Titan's owners flee the country with the money. Kemp further claimed it had shown a probability of succeeding on the merits of its lawsuit because Hovatter had conclusively determined Titan breached the subcontract.[3]

The court denied ex parte relief, but scheduled a hearing two weeks later. After considering the parties' arguments, and without benefit of the administrative record for its review, the court granted the right to attach order. The minute order expressly states that rather than continuing the matter, the court considered the issue of collateral estoppel, despite its having been raised for the first time in Kemp's reply brief.[4] The right to attach order is based on the following finding: "On each contract the failure of Titan to complete their contracted work has been litigated before the administrative officer who made

---

[3] In its cross-complaint, Titan alleges 11 causes of action, including, inter alia, breach of contract, conversion, trespass to chattels, and promissory estoppel.

[4] At oral argument, Kemp's counsel made a somewhat equivocal assertion that the trial court did not really rely on a collateral estoppel theory. In light of the fact that Kemp raised and urged the collateral estoppel issue at the 11th hour in the trial court and justified it as grounds for affirmance in its last minute respondent's brief, we find disingenuous the argument that the trial court went straight to an evaluation of the evidence supporting Kemp's right to an attachment order and ruled solely on that ground. Moreover, as discussed more fully, *post*, the argument regarding such judicial deliberations is utterly without support in the record.

a specific finding that, '. . . Titan made no reasonable effort to timely complete the work Kemp could reasonably expect Titan to perform.' In other words Titan breached each of the contracts. Titan cannot re-litigate this in a new action without exhausting [its] administrative remedies first. [Citations.] The criteria for the issuance of the writ has been established."

The right to attach order is in the inscrutable amount of $684,915.97. Kemp sought $1.5 million in damages, and neither the order, the moving papers, nor any other documentation we have uncovered in our comprehensive search of the record, discloses how the court calculated the attachment amount down to the last penny. Moreover, respondent did not direct our attention *or*, so far as we can ascertain, the trial court's attention to any contract provision setting forth the formula or mechanism for calculating the damages flowing from Titan's alleged performance default.[5]

## DISCUSSION

■ Titan advances a number of arguments for reversing the right to attach order. Because one ground is dispositive, we do not discuss the others. As we have noted, *ante*, " 'the plaintiff has the burden of proving (1) that his claim is one upon which an attachment may be issued and (2) the probable validity of such claim.' " (*Bank of America v. Salinas Nissan, Inc., supra*, 207 Cal.App.3d at p. 271.) "A claim has 'probable validity' where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim." (§ 481.190.) The record discloses the trial court did not assess

---

[5] We mention this glaring omission because an attachment order may be issued only if the claim sued upon is, inter alia, for money based upon a contract and is of a "fixed or readily ascertainable amount." (§ 483.010, subd. (a).) Although damages need not be liquidated, they must be measurable by reference to the contract sued upon, and their basis must be reasonable and certain. (*CIT Group/Equipment Financing, Inc. v. Super DVD, Inc.* (2004) 115 Cal.App.4th 537, 540 [8 Cal.Rptr.3d 927]; *Baker v. Superior Court* (1983) 150 Cal.App.3d 140, 146–147 [197 Cal.Rptr. 480] ["The Legislature has determined attachments may properly issue only to secure anticipated recoveries on contract claims in fixed or readily ascertainable amounts"].) As the *CIT Group* court more expansively explained the statutory requirement, " ' "[T]he contract sued on must furnish a standard by which the amount due may be clearly ascertained and there must exist a basis upon which the damages can be determined by proof." ' " (*CIT Group, supra*, 115 Cal.App.4th at p. 540.) *CIT Group* presents a paradigm: The case involved an issue of deficiency after a tenant defaulted on a commercial equipment lease. In determining there was a clear basis for attachment, the court noted, "There is no profit or other calculation to be made to ascertain the monthly rent due; each of the lease schedules sets forth the rental period and the monthly rent due for each machine. The master lease and corresponding lease schedules provide a clear and definite formula for the computation of damages, to wit: the monthly rent multiplied by the unexpired term." (*Id.* at p. 541.)

the sufficiency of Kemp's evidence or weigh it against Titan's evidence on the issue. Instead, it relied solely on an incorrect theory that Titan was collaterally estopped from challenging the adequacy of Kemp's showing.

■ The rules of collateral estoppel have been addressed by our Supreme Court for at least 140 years. As recently reiterated by that court, " 'Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings.' " (*Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 943 [38 Cal.Rptr.3d 220, 126 P.3d 1040] (*Pacific Lumber*), citing *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [272 Cal.Rptr. 767, 795 P.2d 1223].) Under *Pacific Lumber*, "[t]he doctrine applies 'only if several threshold requirements are fulfilled.' " (*Pacific Lumber, supra*, 37 Cal.4th at p. 943.) Inter alia, " '[f]irst, the issue sought to be precluded from relitigation must be *identical* to that decided in a former proceeding. Second, this issue must have been *actually litigated* in the former proceeding. Third, it must have been *necessarily decided* in the former proceeding.' " (*Ibid.,* italics added.)

■ The party asserting collateral estoppel bears a "heavy" burden of proving all of these factors (*Pacific Lumber, supra*, 37 Cal.4th at p. 943) because, as explained by Justice Chin in *People v. Garcia* (2006) 39 Cal.4th 1070, 1092 [48 Cal.Rptr.3d 75, 141 P.3d 197] (conc. & dis. opn. of Chin, J.), citing a number of Supreme Court cases dating from as far back as the Civil War, " 'the law does not favor estoppels.' . . . '[c]ertainty is an essential element of every estoppel . . . .' [Citation.] Thus, where a party asserts 'a certain question in issue has been litigated and determined between the same parties in a previous action, it is not enough that the proposed evidence tends to show that the precise question may have been involved in such litigation.' [Citation.] In other words, ' "[e]very estoppel must be certain to every intent, and not to be taken by argument or inference." [Citation.] "If upon the face of a record anything is left to conjecture as to what was necessarily involved and decided, there is no estoppel in it when pleaded, and nothing conclusive in it when offered in evidence." [Citation.]' " (See also *People v. Frank* (1865) 28 Cal. 507, 517 ["a party cannot be precluded from giving evidence touching matters directly or collaterally involved in the issue upon the mere suspicion that they have already been determined against him by competent judicial authority; before that can be done *it must appear with certainty that such matters have been so determined*" (italics added)]; *Oakland v. Oakland Water Front Co.* (1897) 118 Cal. 160, 221 [50 P. 277] ["in the case of a judgment, unless this certainty appear upon the face of the record, the record of the judgment will not constitute an estoppel"].)

The case here does not meet the threshold requirements for application of collateral estoppel. In the first place, Hovatter's decision in the substitution proceeding makes *no* mention of any of Kemp's or Titan's rights or obligations under the subcontract. Quite to the contrary, it expressly finds the advance payroll payment agreement between Kemp and Titan was an "informal arrangement," "above and beyond" their contractual relationship. Under that "informal arrangement," through which Kemp sought "to achieve its own best interest," Kemp advanced payments to Titan for a few months, and then ceased the practice. According to Hovatter, the cessation was unrelated to Kemp's duties under the subcontract, i.e., "[w]hen Kemp chose to discontinue this action [under the informal agreement], Kemp was not in violation of its contractual requirement [under the provisions of the subcontract] to pay Titan." And although Hovatter's decision recites that Titan's unpaid workers abandoned the project, it does *not* say this abandonment constituted a breach of the subcontract. The decision says only, "It was apparent during the hearing that Titan made no reasonable effort to timely complete the work Kemp could reasonably expect Titan to perform." Contrary to the court's interpretation, this language is not the equivalent of a finding of Titan's liability for breach of contract: Rather, it is the equivalent of the statutory language of Public Contract Code section 4107, subdivision (a)(7), authorizing the hearing officer to allow substitution when he or she determines "that the subcontractor is substantially delaying or disrupting the progress of the work."

In the second place, as noted, *ante,* the issue a party seeks to preclude must have been *identical* to and " '*necessarily decided* in the former proceeding.' " (*Pacific Lumber, supra,* 37 Cal.4th at p. 943, italics added.) Here, the issue before Hovatter was whether Kemp had set forth adequate grounds under Public Contract Code section 4107 for substituting another electrical contractor in Titan's stead, and that issue was neither identical to the breach of contract issues raised in Kemp's civil action nor necessarily decided by Hovatter in determining the existence of statutory grounds. For instance, Titan could have been entirely justified, i.e., not in breach of the subcontract for a variety of reasons, when it abandoned the public works projects and substantially delayed or disrupted the progress of the work, as Hovatter found it had done. Kemp has no answer to this truth: It is inescapable.[6]

---

[6] In passing, we note a further problem with the trial court's determination. While giving collateral estoppel effect to Hovatter's decision, the court observed Titan had not yet exhausted its administrative remedies, i.e., the decision had not achieved finality. Ironically, absent finality, collateral estoppel does not apply. (*Pacific Lumber, supra,* 37 Cal.4th at p. 943 [" 'the decision in the former proceeding must be final' "].)

Our conclusion that there was no determination of breach of contract issues in the substitution proceeding is reinforced by the absence of any suggestion in the record that the parties *submitted* anything other than statutory substitution issues to Hovatter. We do not decide there can never be a collateral estoppel flowing from the hearing officer's findings in a statutory substitution proceeding: That question is not before us. But under the circumstances here, where there is no evidence the issue of Titan's alleged breach of contract was "fully and fairly litigated on a previous occasion" (*Sandoval v. Superior Court, supra*, 140 Cal.App.3d at p. 941), the *certainty* necessary to every estoppel (see *People v. Garcia, supra*, 39 Cal.4th at pp. 1091–1092 (conc. & dis. opn. of Chin, J., and cases cited therein) is lacking.[7]

 In summary, there is no valid basis for the application of collateral estoppel to bar Titan from litigating the issue of its alleged breach of contract. On remand, the court must consider whether Kemp has met its burden of establishing the factors set forth in section 483.010, subdivision (a) (see fn. 4, *ante*) and demonstrating it is more likely than not it will obtain a judgment against Titan. (§ 481.190.) In determining the latter, the court "must consider the relative merits of the positions of the respective parties . . . ." (*Loeb & Loeb v. Beverly Glen Music, Inc., supra*, 166 Cal.App.3d at p. 1120; see § 481.190.)

---

[7] Certain facts of which we have taken judicial notice arose *after* the court issued its order. These facts bolster our conclusion that collateral estoppel does not apply. Briefly, Hovatter, in response to Titan's postorder request for clarification, *amended* his decision, unequivocally stating, "[T]he breach of Titan's subcontract with Kemp Brothers was *not* an issue that was addressed during the substitution hearing." (Italics added.) Then, when Titan petitioned for writ of administrative mandate from Hovatter's decision, the superior court, denying relief, observed, "Titan Electric's contention that LAUSD has no power to decide whether Titan Electric or Kemp Bros. breached the subcontract between them, is irrelevant because the hearing officer *clearly stated in writing that such issue was not addressed during the substitution hearing.*" (Italics added.) As a matter of law, collateral estoppel does not apply where the court or, in this case, hearing officer, has expressly refrained from deciding an issue. (*Stark v. Coker* (1942) 20 Cal.2d 839, 843 [129 P.2d 390], and a legion of cases thereafter.) In counterpoint, the law is established beyond cavil that "when it affirmatively appears that an issue was *not* determined by the judgment, it obviously is *not* res judicata upon that issue." (*Ibid.*, italics added.)

Obviously, it would be unfair to use this postjudgment rationale for reversing a court that was in the dark when it issued its order, and we do not do so, but we perceive no unfairness in noting our appraisal of the record did not miss its mark.

## DISPOSITION

The attachment order is reversed. The case is remanded with directions to the trial court to weigh all relevant factors in accordance with this decision and determine whether Kemp carried its burden of establishing the criteria for obtaining relief. Titan shall recover its costs on appeal.

Bedsworth, Acting P. J., and O'Leary, J., concurred.

Respondent's petition for review by the Supreme Court was denied May 9, 2007, S150602.