Filed 4/5/17

CERTIFIED FOR PUBLICATION

IN THE APPELLATE DIVISION SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF FRESNO

| | |
|---|---|
| THE CBM GROUP, INC., | Sup. Ct. Appeal No. 2599 |
| Plaintiff/Respondent, | Superior Ct. No. 16CECL00668 |
| v. | |
| GABRIELA LLAMAS, | |
| Defendant/Appellant. | |

APPEAL from a judgment of the Superior Court of Fresno County, Dale Ikeda, Judge.  Reversed.[1]

**Attorneys and Law Firms**

Marcos Segura, Central California Legal Services, Inc., attorney for defendant/appellant Gabriela Llamas.

Michael J. Lampe, the Law Offices of Michael J. Lampe, attorney for plaintiff/respondent The CMB Group, Inc.

**Opinion**

Donald S. Black, J.

---

[1] This opinion was originally issued by the court on April 5, 2017.  It was certified for publication on May 3, 2017, which is within the time that the appellate division retained jurisdiction. This opinion has been certified for publication in the Official Reports. It is being sent to the Fifth District Court of Appeal to assist the Court of Appeal in deciding whether to order the case transferred to the court on the court's own motion under Rules 8-1000 – 8.1018.

## INTRODUCTION

In this appeal, defendant/appellant Gabriela Llamas (hereinafter "appellant") challenges an unlawful detainer judgment in favor of plaintiff/respondent The CBM Group, Inc. (hereinafter "respondent"). The judgment was based on appellant's failure to pay full market rate rent after she failed to complete paperwork to recertify her application for federal subsidized housing through the Rural Development Program, and also on her alleged drug use and involvement in criminal activities on the property. Appellant contends that the 60-day notice served on her was insufficient to support the judgment because it did not mention any alleged drug use or criminal activity and gave her no opportunity to cure the alleged violations. She also contends that there was no substantial evidence to support the judgment to the extent that it relied on the three-day notice because respondent refused to allow her to complete the recertification process to qualify for the federal subsidy program. We agree that the judgment was not supported by either the 60-day notice or the three-day notice, and therefore we will reverse the judgment.

## II.

## BACKGROUND

Appellant entered into a lease agreement with respondent in November of 2012 to rent an apartment in Kerman. The rent was $766 per month, but appellant was only required to pay $25 per month because she qualified for subsidies under the United States Department of Agriculture's Rural Development Program. In order

to remain in the program, appellant had to recertify her income and household size annually. This required her to meet with the property manager, sign forms, and fill out a questionnaire. The recertification had to be completed before the current certification expired. In appellant's case, this required her to complete the recertification on or before December 31, as her certification expired on January 1. In addition, there was a ten-day grace period, so effectively appellant could complete her paperwork as late as January 10.

The respondent has a policy and practice of sending out several notices to tenants before their certifications expire. Respondent sends a notice 120 days in advance of the expiration date, another notice at 90 days, and a notice at 60 days. The notices state that the recertification is due 45 days prior to the certification effective date, and that a notice of termination will be served if the recertification remains incomplete 30 days prior to the effective date. However, the notice also states that a certification completed *after the expiration date* will not be accepted. Thus, appellant had until December 31, 2015 to recertify.

In the present case, respondent sent appellant a 120-day notice on September 1, 2015, a 90-day notice on October 1, 2015, and a 60-day notice on November 2, 2015. The 120-day notice set a recertification interview for September 11, 2015. However, appellant was unable to meet with the property manager during this period because she was living in a 90-day substance abuse program. She was not allowed to leave the facility for the first 40 days, and even after this "blackout" period, she was only allowed to

-3-

leave under very specific circumstances.

Appellant's sister, Leticia Llamas, told the respondent's property manager, Maria Velez, that appellant was in a rehabilitation program and asked if she still had time to complete the process. Velez said "yes", but told her that appellant still had to come in personally and sign the paperwork. Appellant also called Velez and explained the situation. Appellant told Velez that she would be able to come in to complete the recertification paperwork on November 21, 2015.

Appellant returned home on November 22, 2015, and then met with Velez on November 23 or 24. However, Velez refused to process appellant's recertification. According to appellant, when she went in to complete the recertification, Velez told her that it was too late and that she would not be recertifying appellant. Velez testified that when appellant came into her office and told her she wanted to recertify, Velez told her that she had spoken to her supervisor, Stacey Smith, and that "we will not be renewing your lease." She told her that "we would not be able to do that. Certification has ended." However, Velez subsequently testified that she only told appellant that respondent would not renew her lease, not that she could not recertify under the subsidy program.

When appellant did not complete the recertification process, the rent for the apartment went up to the full market rate of $1,050. Appellant was not able to pay the full amount, and respondent refused to accept her usual payment of $25.

On January 19, 2016, respondent served appellant with a 3-day notice to quit or pay rent. The notice stated that, because appellant did not complete her recertification paperwork by

-4-

January 1, 2016, the rent for her apartment went up to the full market rate of $1,050 per month. Appellant did not pay the full market rate rent as requested, nor did she vacate the premises.

Respondent then filed its unlawful detainer complaint, alleging that appellant had been served with a 3-day notice, and that appellant had failed to quit the premises or pay rent as demanded. The complaint did not allege any other ground for relief, such as failure to comply with the 60-day notice. A copy of the 60-day notice was attached to the complaint, but, although the notice did refer generally to various other lease provisions, the only specific ground for termination in the notice was failure to pay rent after appellant failed to complete the recertification process.

The trial took place on March 7, 8, 28, and April 18, 2016, in Department 401, Judge Ikeda presiding. Ms. Velez and Ms. Smith testified on behalf of respondent regarding appellant's failure to recertify and failure to pay rent after her federal subsidy expired, and their subsequent service of the 3-day notice. Appellant testified that she was in rehabilitation and unable to fill out the paperwork until she was allowed to leave on November 22. 2015. She also testified that, when she went to see Velez on November 23 or 24, Velez refused to allow her to complete the recertification and told her that it was "too late."

Also, Velez testified that she refused to renew appellant's lease because of "some other incident that doesn't serve as a basis for this particular lawsuit." Appellant's counsel objected that this testimony was irrelevant, but the court overruled the objection. Velez then testified that there was an incident

involving appellant's ex-boyfriend, Steve Valdivia, in which the Kerman police came to the apartment. She also mentioned that there had been a "rash of burglaries" in the area, and that there was "stolen property" on the premises. The court then sustained a relevance objection.

Respondent's counsel also attempted to ask appellant about her stint in the rehabilitation program, claiming that such 90-day programs are imposed by courts in cases involving cocaine or methamphetamine charges, and asking appellant if she had been convicted of any Penal Code violations. The court sustained a relevance objection to this question. Respondent's counsel then asked further questions, which established that appellant had not been convicted of any criminal conduct, and that she had voluntarily enrolled in the rehab program.

The court then concluded the evidentiary portion of the trial, and directed the parties to submit post-trial briefs by March 18, 2016, with closing arguments on March 28, 2016.

However, at the hearing on March 28, the trial court informed the parties that he had noticed additional issues that might require presentation of further evidence. In particular, Judge Ikeda claimed that, while he had been under the impression that the sole basis for the termination was the failure to complete the recertification, he later realized that the termination might also be based on possible criminal activity and drug use at the apartment. He also pointed out that the 60-day notice had referenced certain lease covenants regarding criminal activity and drug use which might support the eviction. He noted that the respondent's counsel had not pointed out that these provisions

-6-

might support the eviction, but he believed the alleged activity might fall within the purview of the provisions. He also indicated that he might not have sustained some of appellant's objections if he had realized that the eviction might relate to the criminal activity and drug use allegations. Respondent's counsel stated that this was a "very simple" case, and that it was based on the "three-day notice" based on a "failure to certify." However, the trial court concluded that it was necessary to reopen the case and take further evidence on the issues of criminal activity and drug use as an alternative basis for eviction. Thus, the court continued the trial to April 18, 2016 for further proceedings.

At the reopened trial on April 18, respondent presented the testimony of Ms. Smith regarding an incident on August 24, 2015, in which appellant's ex-boyfriend, Mr. Valdivia, was arrested by the police at the apartment. Smith testified that she was called by the police to come to appellant's apartment and open the door so they would not have to break it down. She opened the door as requested, and the police then arrested Mr. Valdivia. They also removed several garbage bags from the property. Respondent's counsel attempted to ask Ms. Smith about whether Mr. Valdivia was arrested for possession of stolen property, and whether the bags removed from the residence contained stolen property, but the court sustained respondent's counsel's objections as Smith had no personal knowledge of these facts.

Respondent's counsel was not able to present any other evidence regarding Valdivia's alleged criminal conduct, as he was unable to obtain police reports or documents concerning the

incident. Nor did respondent present any other evidence regarding appellant's possible drug use on the premises.

However, the trial court then searched the court's records and found a misdemeanor complaint against Mr. Valdivia for resisting arrest, but not possession of stolen property. The court also found a misdemeanor change of plea form signed by Valdivia and admitted it into evidence, along with a copy of the misdemeanor complaint. Appellant's counsel objected to admission of the change of plea form, contending that it did not constitute an admission of guilt, but the trial nevertheless admitted the change of plea into evidence.

The court then granted respondent's motion to amend the complaint to add an allegation that the 60-day notice was an alternative basis for termination based on criminal activity, which the court found to be an incurable breach of the lease.

The court ruled that there was insufficient evidence to support the allegation of possession of stolen property on the premises, because there was no charge or conviction of this crime, and Ms. Smith's testimony was properly objected to and sustained. However, the court nevertheless found that there was a no contest plea to resisting arrest, and thus there was evidence of criminal activity that was disruptive of the stability of the premises, if only for a short time. In addition, the court held that the appellant's certification of completion of the substance abuse program supported an inference that she had been using drugs on the premises, which was a violation of Covenant 15D of the lease.

Finally, the court found that appellant had not established a reasonable excuse for failing to complete her recertification

paperwork in time, and that she had not submitted her paperwork before the expiration date of December 1, 2015.  The court found that appellant had not set up a meeting with Velez prior to the expiration date, even though she was aware of the fact that she needed to complete her recertification application.

The court then granted judgment in favor of respondent, and awarded possession of the premises to respondent.  The court also ordered appellant to pay damages of $4,082.34 to respondent, plus attorney's fees of $100, because "most of the court's decision is based upon a theory not originally alleged or briefed."

**III.**

**DISCUSSION**

**Standard of Review:** With regard to the question of whether the 60-day notice gave adequate notice that the lease termination was based on criminal activity and drug use, we apply the *de novo* standard of review.  Where there is no conflict in the evidence and the sole issue is the interpretation of a contract or written instrument, the appellate court must make an independent determination of the meaning of the contract. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866.)  Also, we review the trial court's application of federal regulations to the undisputed content of the 60-day notice *de novo*.  (*Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888.)

However, the trial court's factual determination that appellant did not comply with the recertification requirement and failed to pay the full market rate rent must be reviewed under the substantial evidence standard.  "When the trial court has resolved

-9-

a disputed factual issue, the appellate courts review the ruling according to the substantial evidence rule. If the trial court's resolution of the factual issue is supported by substantial evidence, it must be affirmed. [Citation.]" (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632.)

"When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact." (*Primm v. Primm* (1956) 46 Cal.2d 690, 693, emphasis in original.)

"It is well established that a reviewing court starts with the presumption that the record contains evidence to sustain every finding of fact." (*Tesseyman v. Fisher* (1952) 113 Cal.App.2d 404, 407.)

**Analysis:** In reaching its decision, the trial court relied on two separate notices, the three-day notice and the 60-day notice, both of which were served on appellant prior to the filing of the unlawful detainer complaint. With regard to the 60-day notice, the trial court found that appellant had used illegal drugs on the premises and that her ex-boyfriend had engaged in criminal activities that were disruptive to the stability of the premises. The court also found that appellant had failed to explain why she did not come in to respondent's office to recertify for the federal subsidy program, and failed to pay the full market rate rent when she was dropped from the subsidy program.

However, the trial court's reliance on the 60-day notice to support the eviction based on drug use or criminal activity was

-10-

misplaced, since the 60-day notice did not mention that appellant was going to be evicted for either using illegal drugs or engaging in criminal activity on the premises. The 60-day notice states that "The reason(s) for service of this notice and termination of your tenancy is (are): You have failed to comply with the Notice of Lease Agreement Violation-Recertification served upon you on 9/2/15 requiring that you comply with the recertification process. **You have failed to complete the recertification process in a timely manner which will result in the expiration of your Tenant Certification on** 12/31/15. You failed to fulfill the conditions and/or standards agreed upon in your Lease for continued eligibility in this complex; a redetermination of eligibility shall be made by the Owner/agent once a year from the date of the previous certification." Thus, the 60-day notice only relied on appellant's failure to complete the recertification process in a timely manner, not any alleged drug use or criminal activity on the premises.

As the trial court noted, the notice does cite to several different covenants in the lease agreement, including Covenants 3(A), 5(C), 6(A), (B), (F), and (G), and 15(A) and (B). Covenants 3(A), 5(C), and 6(A), (B), (F) and (G) simply require the tenant to meet certain income requirements and comply with the federal subsidy certification process in a timely manner. Covenant 15(A) grants the landlord the power to terminate the lease under certain conditions, including actions by the tenant which disrupt the livability of the project by a direct threat to the health and safety of any person, or the right of any person to the quiet enjoyment of the Premises. Covenant 15(B) defines "material

-11-

noncompliance" with the lease to include nonpayment or repeated late payment of rent, or use or sale of an illegal controlled substance on the premises by the tenant or a member of the tenant's household.

However, the 60-day notice did not specifically cite to the covenant regarding criminal activity or drug use on the premises to support the eviction. As noted above, most of the covenants cited refer to failure to pay rent or failure to meet the requirements for certification in the federal subsidy program. The notice never expressly stated that appellant's lease was being terminated for drug use or criminal activity on the premises, and it appears that the citations to the specific covenants were intended to support the termination for failure to complete the recertification process, not to place appellant on notice that she was being terminated for engaging in drug abuse or criminal activities. If respondent had intended to terminate appellant's lease for criminal activities or drug use on the premises, it would presumably have expressly stated in the 60-day notice that it was relying on such activities as a basis for the termination.

Even if respondent did have some unstated intent to terminate the lease based on other grounds such as criminal activity and drug use, it would not be fair to require a tenant to guess as to the underlying reasons for the termination of the lease, especially where the notice refers to only one specific ground for termination and mentions others only by a vague and ambiguous citation to the lease covenants. If respondent wished to terminate the lease for appellant's alleged drug use and criminal activity, it should have said so clearly in the notice rather than

-12-

simply citing to the lease covenants without any further explanation.

Also, respondent's 60-day notice never cited to Covenant 15(D) of the lease, which is the most applicable covenant if it intended to terminate appellant's lease for criminal activity or drug use. Covenant 15(D) specifically states that the landlord may terminate the tenant's lease for criminal activity or alcohol abuse, including drug-related criminal activity engaged in on or near the premises. However, despite the fact that Covenant 15(D) most directly applies to the type of conduct that the trial court cited in its judgment, the 60-day notice never cited this covenant. Instead, the notice cited to several other covenants, which deal primarily with payment of rent and the tenant's certification under the federal subsidy program. Nevertheless, the trial court appeared to rely on Covenant 15(D) in support of its judgment. Yet since the respondent never gave notice that it was relying on appellant's alleged drug use and criminal activity as a reason to terminate her tenancy, it was error for the trial court to rely on such activity in support of its judgment.

In addition, respondent's conduct subsequent to service of the 60-day notice also indicated that it was not relying on any criminal conduct or drug use to support the eviction. The original unlawful detainer complaint filed by respondent did not even mention the 60-day notice, and instead relied entirely on the three-day notice. The complaint also alleged that the reason for the termination of the lease was that the appellant had failed to recertify for the federal subsidy, thus causing her to be liable for the full fair market amount of rent. Thus, the complaint was

-13-

clearly limited to the issue of whether appellant had failed to complete the recertification process in a timely manner and had subsequently failed to pay the full market rate rent, not whether she had committed other breaches of the lease by using drugs or engaging in criminal activity on the premises.

During the trial, the respondent's counsel asserted that, "The case as we presented it is very simple. It's a three-day notice case. There was a failure to certify." Indeed, the first two days of trial concerned only the claim that appellant had failed to recertify under the federal program, and no attempt was made to establish any other ground for terminating the lease before evidence closed on March 9, 2016. It was only after the trial court reopened evidence in the case on its own motion to explore whether there might be other grounds for termination such as criminal activity or drug use that the respondent attempted to show that appellant had committed such lease violations. Again, however, respondent never served appellant with notice that it might terminate her lease based on alleged drug use or criminal activity, so there was no basis for the trial to allow the parties to present evidence on these issues.

Respondent has argued that it was not required to give appellant specific notice and an opportunity to cure the conduct upon which it relied to terminate the lease. However, the federal regulations regarding lease terminations for subsidized housing do require notice and an opportunity to cure prior to termination of the lease.

Under Code of Federal Regulations, Title 7, section 3560.159, subdivision (a), "Borrowers, in accordance with lease agreements,

may terminate or refuse to renew a tenant's lease only for material non-compliance with the lease provisions, material non-compliance with the occupancy rules, or other good causes." (7 C.F.R. § 3560.159, subd. (a).)

However, "Prior to terminating a lease, the borrower must give the tenant *written notice of the violation* and give the tenant a*n opportunity to correct the violation*. Subsequently, termination may only occur when the incidences related to the termination are documented and there is documentation that *the tenant was given notice prior to the initiation of the termination action* that their activities would result in occupancy termination." (*Ibid*, emphasis added.)

"Material non-compliance with lease provisions or occupancy rules, for purposes of occupancy termination by a borrower, includes actions such as: ... (ii) Non-payment or repeated late payment of rent or other financial obligations due under the lease or occupancy rules; or (iii) Admission to or conviction for use, attempted use, possession, manufacture, selling, or distribution of an illegal controlled substance when such activity occurred on the housing project's premises by the tenant, a member of the tenant's household, a guest of the tenant, or any other person under the tenant's control at the time of the activity." (7 C.F.R. § 3560.159, subd. (a)(1)(ii), (iii).)

Also, "Good causes, for purposes of occupancy terminations by a borrower, include actions such as: (i) Actions by the tenant or a member of the tenant's household which disrupt the livability of the housing by threatening the health and safety of other persons

-15-

or the right of other persons to enjoyment of the premises and related facilities..." (7 C.F.R. § 3560.159, subd. (a)(2)(i).)

Here, the lease agreement did state that the lease could be terminated for criminal activity or use of illegal substances on the premises. (Lease Agreement, Covenant 15(A), (B), (D).) However, the respondent never gave notice to appellant that it was terminating her lease for such conduct, nor did it give her any opportunity to cure the alleged conduct. As discussed above, the 60-day notice stated instead that her lease was being terminated for her failure to complete the recertification process in a timely manner. There was no mention of any other reasons for termination, such as drug use or criminal activity on the premises. Therefore, the 60-day notice was insufficient to support the judgment.

Respondent nevertheless contends that notice was not required, because there is no requirement to give notice and an opportunity to cure where the breach of the lease is based on criminal activity. Respondent cites to *Zucco v. Farullo* (1918) 37 Cal.App. 562 in support of its position. However, *Zucco* did not involve criminal conduct that constituted a breach of the lease, nor was it decided under the federal regulations related to subsidized housing. As discussed above, the federal regulations here require notice and an opportunity to cure the violation before the tenant can be evicted. (24 C.F.R. § 3560.159, subd. (a).) The lease in the present case also provided that the landlord might require the tenant to attend a drug counseling or recovery program and agree not to commit another violation in the future as a condition for reentry if the tenant commits a drug

-16-

violation on the premises. (Lease Agreement, ¶ 8 M.) Notably, in the present case appellant did complete a drug treatment program, and there was no evidence that she intended to commit any future drug or criminal violations. Thus, *Zucco* does not support respondent's position that the appellant's conduct did not require notice and an opportunity to cure.

Respondent also cites to Code of Federal Regulations, Title 7, section 3560.159, subdivision (d), which states that, "Borrowers may terminate tenancy for criminal activity or alcohol abuse by household members in accordance with the provisions of 24 CFR 5.858, 5.859, 5.860, and 5.861." Respondent contends that this provision allows the landlord to terminate the lease regardless of whether there are other provisions in the lease or regulations that require notice and an opportunity to cure the violation. However, section 3560.159, subdivision (d) only permits termination of a tenancy for criminal activity or alcohol abuse "in accordance with the provisions of 24 CFR 5.858, 5.859, 5.860, and 5.861."

Under Code of Federal Regulations, Title 24, section 5.858, "*The lease* must provide that drug-related criminal activity engaged in on or near the premises by any tenant, household member, or guest, and any such activity engaged in on the premises by any other person under the tenant's control, is grounds for you to terminate tenancy. In addition, *the lease* must allow you to evict a family when you determine that a household member is illegally using a drug or when you determine that a pattern of illegal use of a drug interferes with the health, safety, or right to peaceful enjoyment of the premises by other residents." (24

-17-

C.F.R. § 5.858, emphasis added.) Likewise, sections 5.859 and 5.860 provide that the lease must provide for termination if the tenant or household member's alcohol abuse or criminal activity threatens the health, safety, or right to peaceful enjoyment of the premises by the other residents. (24 C.F.R. §§ 5.859; 5.860.)

Thus, section 3560.159, subdivision (d) only permits termination for criminal activity where such activity is also prohibited by the lease itself and provides grounds for termination under the lease. In other words, subdivision (d) provides for termination of the lease if the tenant violates the lease provisions barring criminal conduct.

Here, the lease language does specifically provide that drug use and criminal activity are grounds for termination. (Lease Agreement, Covenant 15(A), (B)3, (D).) Thus, section 3560.159, subdivision (d), does permit termination of the lease for criminal activity. Again, however, there was nothing in the 60-day notice that informed appellant that her lease might be terminated based on any alleged criminal activity.

To the extent that respondent argues that that subdivision (d) allows termination of the lease without any notice whatsoever where there is criminal activity, this interpretation would be inconsistent with the normal notice requirements of unlawful detainer actions as well as the notice requirement of section 3560.159, subdivision (a). Notably, subdivision (d) does not set forth a specific procedure for terminating the lease for criminal activity or alcohol abuse. Instead, subdivision (d) incorporates the language of the lease itself by referencing Code of Federal Regulations, Title 24, sections 5.858, 5.859, 5.860, and 5.861,

-18-

which indicates that any termination for criminal activity would still have to be based on violation of the lease terms. Thus, a termination under subdivision (d) would still be based on a "material non-compliance with the lease provisions", and the same procedures required under subdivision (a) would apply to subdivision (d) terminations as well. Since the 60-day notice did not give appellant any notice or an opportunity to cure the alleged criminal conduct, the trial court erred in relying on the criminal conduct when it granted judgment in favor of respondent.[2]

However, respondent argues that, even if the trial court's decision based on the 60-day notice was erroneous, the judgment should still be affirmed based on the trial court's finding that appellant failed to recertify for the federal subsidy. When it ruled in favor of respondent, the trial court found that appellant had not explained why she did not meet with respondent's manager and complete the paperwork to recertify for the federal subsidy program, and thus the full market rate rent applied and the three-day notice correctly stated the amount of rent as $1,050 rather than $25. The trial court acknowledged that appellant claimed that there should be a reasonable accommodation because she was in the rehabilitation program, and that she was not able to leave the program and meet with respondent's manager to complete the paperwork until after the "blackout" period ended. However, the trial court concluded that she could have arranged a meeting after the blackout period ended or after she left the program, and that

---

[2] Since we find that the 60-day notice did not give notice that the termination was based on criminal activity or drug use, there is no need to address appellant's other arguments, including whether the trial court improperly permitted amendment of the complaint, whether it improperly relied on a misdemeanor plea bargain to establish criminal activity, or whether it improperly relied on speculation to show drug use.

her failure to do so meant that she was not eligible for the federal subsidy program and thus she was liable for the full market rate rent.

Yet the trial court's findings regarding the appellant's failure to complete the recertification process entirely ignored the extensive testimony at trial regarding appellant's meeting with Maria Velez in late November of 2015. Even though the substantial evidence standard is highly deferential, the trial judge's ruling will not be upheld if the trial court failed to weigh the evidence. (*Kemp Bros. Construction, Inc. v. Titan Electric Corp*. (2007) 146 Cal.App.4[th] 1474, 1477-1478.) "The [substantial evidence] rule thus operates only where it can be presumed that the court has performed its function of weighing the evidence. If analysis of the record suggests the contrary, the rule should not be invoked." (*Estate of Larson* (1980) 106 Cal.App.3d 560, 567.)

Here, the trial court did not discuss, and apparently completely disregarded, the testimony of both appellant and Ms. Velez regarding the meeting that took place in late November of 2015 after appellant left the rehabilitation program. According to Velez's testimony, appellant came into her office in late November and stated that she was there to "do the recertification." However, Velez told her that "we would not be renewing her lease." "I told her, 'Gabby, I spoke to my supervisor Stacey and we will not be renewing your lease.'"

On cross-examination, Velez testified that she told appellant that "certification has ended", and that "we would not be able to do that" [i.e. recertify appellant]. However, Velez admitted

-20-

that, at the time of the meeting, the deadline to recertify appellant had not yet passed, and that appellant still had about two months left to recertify. Velez then clarified that she told appellant that respondent would not be renewing her lease due to another incident that was not the basis of the unlawful detainer action. Velez testified on redirect that she never told appellant that she would not be recertified, only that respondent would not renew her lease.

Appellant then took the stand and testified that she went to meet with Velez "around November 24th" after she had been released from the rehabilitation program to discuss recertification. She told Velez that she was there to do her recertification, and Velez told her that they were not going to be recertifying her. Velez later stopped working for respondent, and there was no manager on the premises, so appellant had no one to contact regarding recertification. Appellant finally spoke with Stacey Smith on January 4, 2016. Smith also told appellant that respondent would not be recertifying her, and she refused to accept appellant's offer to pay $25 in rent under the subsidized rate. Instead, she insisted on payment of the full market rate rent of $1,050.

Thus, while there was some conflict between Velez's testimony and appellant's with regard to the issue of whether Velez refused to recertify appellant for the subsidy program or whether she simply refused to renew her lease, there is no dispute that appellant did come into Velez's office in late November of 2015, before the recertification period had expired, and attempted to complete the recertification process. The trial court's finding that appellant had not made any attempt to meet in person with

-21-

respondent's agents to complete the recertification process entirely disregarded all of this evidence, and failed to engage in any weighing of the conflicting statements of Velez and appellant on the key issue of whether appellant was allowed to recertify for the subsidy. Therefore, even under the deferential substantial evidence standard, the trial court's finding was unsupported by the evidence, which clearly showed that appellant had made an attempt to meet in person with Velez and complete the recertification paperwork.

Respondent claims that Velez simply told appellant that respondent would not be "renewing" the lease, not that it would not be "recertifying" her for the subsidy program. Respondent contends that, even if Velez told appellant that her lease was not going to be renewed, appellant should still have made further attempts to complete the recertification. However, the trial court never addressed this conflict between the testimonies of the two witnesses, or even acknowledged that there was any testimony about the meeting, so the court never resolved the question of which statement was more credible or whether respondent refused to recertify appellant for the subsidy program or simply refused to renew her lease.

In any event, even assuming that the trial court impliedly found that Velez's testimony was more credible and that respondent simply refused to renew appellant's lease, the refusal to renew appellant's lease was sufficient to justify appellant's failure to complete the recertification paperwork. In light of Velez's statement that respondent was not going to renew appellant's lease, given just after appellant came into her office and stated

that she wanted to do the recertification paperwork, it would have been a futile act for appellant to insist on completing the recertification. What would the purpose of further efforts to complete the recertification process have been if respondent refused to allow appellant to renew her lease? Without an apartment to rent, appellant's completion of the recertification for the subsidy would have accomplished nothing. Regardless of whether Velez told appellant that she was not going to allow her to recertify or whether she told her that respondent was not going to renew her lease, the effect was the same: appellant would not be able to continue living in the apartment.

Therefore, we find that there was no substantial evidence to support the trial court's conclusion that appellant had not offered any explanation for her failure to complete the recertification process.

## IV.

## DISPOSITION

The judgment awarding possession of the premises to respondent as well as the award of money damages against appellant is reversed. The matter is remanded back to the trial court, with directions that judgment is to be entered in favor of appellant.

Dated this ___ day of May, 2017

_____
Hon. Donald S. Black, Presiding Judge
Appellate Division of Fresno Superior
Court

WE CONCUR:

-23-

_____
Hon. F. Brian Alvarez, Judge




_____
Hon. Gary D. Hoff, Judge